## COMMISSIONER OF INTERNAL REVE-
## NUE v. KITSELMAN.

### No. 6022.

Circuit Court of Appeals, Seventh Circuit.

April 12, 1937.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

J. Murray Chenoweth, of Muncie, Ind., for respondent.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

EVANS, Circuit Judge.

This appeal raises the question of the deductibility of a loss claimed to have been allegedly sustained by a bondholding taxpayer in the alleged reorganization of a company with outstanding bonds. The taxpayer exchanged defaulted railroad mortgage bonds for a credit and stocks and bonds in a new company formed to receive the assets of the debtor company, which were purchased at a sale on the foreclosure of the mortgage which secured the taxpayer's bonds. In brief, liability depends upon whether there was effected such a statutory reorganization as is covered by section 112 of the Revenue Act of 1928 (26 U.S.C.A. § 112 and note). If the transaction whereby the bondholder surrendered his bonds and secured a cash credit and stocks and bonds was a result of a statutory reorganization, there was no loss which the taxpayer may deduct until the new securities are sold. The taxpayer did not dispose of his new securities in 1930. As an alternative position, the Government argues that, even though there were no reorganization, the loss should be calculated by deducting the value of the new stocks and bonds, as well as any other credit which the taxpayer received, from the cost of the old bonds.

The executrix of the taxpayer contends that no reorganization in fact took place, and the Board correctly held that the taxpayer sustained a loss which was properly measured by the difference between the cost of the bonds and the cash received on their exchange. This cash item is explained in the following statement of the transaction.

The Facts: The taxpayer bought $27,000 of mortgage bonds (for which he paid $20,500) of the Chicago, South Bend & Northern Indiana Railway Company, an insolvent company (hereinafter called A). A and some of its subsidiaries were the borrowers. Default occurred on these bonds July 1, 1927, and a receiver was appointed for A on July 9, 1927. Taxpayer deposited his bonds with a committee, and his share of the committee's expenses amounted to $625. A reorganization agreement was executed October 11, 1929. The reorganization committee caused the trustees under the mortgages to foreclose the mortgages securing taxpayer's bonds, and a final decree was entered November 9, 1929. A public sale of the properties securing the bonds followed, February 1, 1930, and the reorganization committee bought the property in for $430,000. The sum of $63,000 came from bondholders' deposit fee, and the balance was a credit on the deposited bonds. The court entered a deficiency decree for the balance. A new company, the Northern Indiana Railways, Inc., hereinafter called B, was formed by the reorganization committee, and all the assets of A were transferred to B, for which assets B issued part of its stocks and bonds to the bondholders' committee, and they were by it distributed pro rata to the bondholders. For his $27,000 of bonds in A, the taxpayer received 553 shares of B's no par stock, valued at $2.25 per share, and bonds of the face value of $9,775 with a market value of $35 per hundred.

The foreclosure decree dealt with the transfer to taxpayer as follows: A credit of $2,607.94 was paid, and a deficiency of $24,392.06, the balance of the $27,000 face value of the A bonds, was recognized.

The possibility of realizing on the deficiency decree was slight, if not nil, for A had conveyed all its assets to B and was entirely inactive.

97% of the bondholders of the foreclosed A mortgage agreed to the transfers of the assets to B, but neither A's creditors, stockholders, or bondholders of any other issue, took any part in the plan or received any benefit. No articles of consolidation or merger were filed in the proper state office. Company A had one prin-

cipal mortgage issue and two subsidiary issues totaling $4,415,000, which were secured by separate mortgages on some part of A's property. No foreclosure was ever begun on A's underlying mortgage. Taxpayer held no bonds in that issue. Company B assumed liability for that issue, which was extended by agreement of its holders and B. The assets of another subsidiary of A, which were subject to another mortgage, were conveyed to B pursuant to a separate so-called reorganization scheme.

There are two questions presented: (a) Was there a reorganization as that term is used in said section 112 which covered the taxpayer's bonds? (b) What deficiency should be assessed against taxpayer in case (1) there was a reorganization and (2) there was no reorganization within section 112 of the Revenue Act of 1928?

Section 112 (26 U.S.C.A. § 112(b) (3), (g) and note) reads:

"(b) * * * (3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

"(i) *Definition of Reorganization.* As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected."

There are many decisions interpreting the reorganization sections of the Revenue Act, above quoted. Some have found a reorganization to exist, and others have found the factual situation to be such as to fall without the purview of the reorganization defined by said statute. The following principles are deducible from the decisions:

1. Section 112 (i) (1) (A) 26 U.S.C.A. § 112(g) and note covers situations distinct from section 112 (i) (1) (B), 26 U.S.C.A. § 112(g) and note, but may overlap a bit. Helvering v. Minn. Tea, 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284.

2. The matter within the parenthesis of subsection (A) does not limit, but expands, those mergers or consolidations which are meant to be reorganizations. Helvering v. Minn. Tea, supra; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428.

3. The sale of all a company's assets for cash does not constitute a reorganization. Helvering v. Minn. Tea, supra; Pinellas Ice & Cold Storage Co. v. Commissioner, supra.

4. There must be a continuity of interest of the transferor or its stockholders in the transferee, and such interest may not be mere short term notes of the transferee, but must be definite and material and represent a substantial part of the value of the thing transferred. G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291; Helvering v. Minn. Tea Co., supra; Pinellas Ice & Cold Storage Co. v. Commissioner, supra; Cortland Spec. Co. v. Commissioner, 60 F.(2d) 937 (C.C.A.2); Worcester Salt Co. v. Commissioner (C.C.A.) 75 F.(2d) 251.

5. The transferor need not be dissolved or cease doing business. Helvering v. Minn. Tea Co., supra; G. & K. Mfg. Co. v. Helvering, supra.

6. A large part of consideration may be cash. Helvering v. Minn. Tea Co., supra.

7. Bonds (not short term notes) are securities within meaning of statute. Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; Burnham v. Commissioner (C.C.A.) 86 F.(2d) 776—10 year notes.

Although the instant situation is rather novel in the aspect that neither the stockholders nor corporation participated in any way in the plan whereby the mortgage was foreclosed, the new company formed, and the assets transferred to the committee and by it to the new company, we believe a statutory reorganization was effected. The only reason the stockholders did not participate in the plan was that their stock represented no assets and was valueless, and therefore they were without

right to speak. In re 620 Church Street Corporation, 299 U.S. 24, 27, 57 S.Ct. 88, 81 L.Ed. ——. .

Bondholders are ordinarily viewed merely as creditors, but when the assets of the corporation are less than its obligations, the bondholders are in actuality and for all practical purposes pretty much the corporation. All that remains for the stockholders is the corporate charter—the corpse of the defunct corporation. When the new corporation was formed by the bondholders' representatives, it received all the corporate assets in exchange for the new company's stocks and bonds. The old stockholders as such received nothing.

There may not have been a reorganization in the sense that the capital structure was changed (except as to the bonds), but the essence of the corporate life—all its assets—were transferred by its bondholders to a new corporation in exchange for that corporation's stocks and bonds. It is not indispensable to a reorganization that there be a dissolution of the old corporation.

The novelty of this situation arises from the lack of participation by stockholders of the transferor corporation. If they participated, there would be little doubt as to the existence of a reorganization.

It is clear that the bondholders were the moving spirit and were treated as the owners in fact, and it follows that they must be viewed as a class of "stockholders" somewhat akin to preferred stockholders with cumulative dividend rights. Their position was stepped up by reason of what had occurred and the finding that there was no equity over the lien of the mortgage. Where the assets of the corporation fall far below the amount required to pay the bondholders in full, the bondholders in bankruptcy reorganization supersede the stockholders. They acquire the stockholders' rights to manage the corporate affairs. There is a difference between the position of stockholders in a case like the present one and stockholders of a corporation in bankruptcy proceeding under section 77B (11 U.S.C.A. § 207) to a reorganization, but the analogies are sufficient to justify a study of the decisions in the latter field.

We conclude that there was a reorganization within the contemplation of the statute and that therefore there was no loss realized upon the exchange of the bonds for the stock and bonds of the new company.

The order of the Board of Tax Appeals is reversed with directions to proceed in accordance with the views here expressed.