**COMMISSIONER OF INTERNAL REVE-
NUE v. NEWBERRY LUMBER &
CHEMICAL CO.**

**NEWBERRY LUMBER & CHEMICAL CO.
v. COMMISSIONER OF INTERNAL
REVENUE.**

Nos. 7381, 7382.

Circuit Court of Appeals, Sixth Circuit.

Feb. 11, 1938.

F. E. Youngman, Sp. Asst. to Atty. Gen.
(James W. Morris, Asst. Atty. Gen., and
Sewall Key and Norman D. Keller, Sp.
Assts. to Atty. Gen., on the brief), for the
Commissioner.

John E. Tracy, of Ann Arbor, Mich.,
for Newberry.

Before MOORMAN and SIMONS, Cir-
cuit Judges, and RAYMOND, District
Judge.

MOORMAN, Circuit Judge.

The Charcoal Iron Company of America
was a corporation owning lands and en-
gaged in operating sawmills and mines in
the Upper Peninsula of Michigan. Among
its liabilities was an issue of outstanding
first mortgage bonds. Being unable to meet
the obligations of the bonds, it was placed
in a receivership in the United States Dis-
trict Court for the Western District of
Michigan in March of 1926. The receivers
operated the property of the company for
three years, during which time certain of its
properties were sold and the proceeds ac-
counted for to the court. In May of 1929
the court ordered a sale of its remaining
properties by a special master. The order
directed that the mortgaged assets and the
unmortgaged assets be offered for sale
separately, and that the fixed assets might
be paid for in either cash or first mortgage
bonds, and the unmortgaged assets in cash
or allowed claims against the company.
During the receivership a bondholders' pro-
tective committee representing 93 per cent.
of the bonds outstanding was formed and
formulated plans for a reorganization of
the company. At the special master's sale
both the mortgaged and unmortgaged as-
sets of the company were bid in by the
committee. The mortgaged assets were bid
in for $400,000 and paid for by bonds held
by the committee plus sufficient cash to pay
the nondepositing bondholders and the ex-
penses of the sale. The unmortgaged assets
were bid in for $140,000 and paid for in
cash. In the meantime the committee had
formed, according to its plans, a new cor-
poration, the petitioner to take over the
assets of the old corporation, and upon the
confirmation of the sale to the committee the
assets of the old corporation were convey-
ed to the new, in consideration of which the
new corporation issued and delivered to the
committee its entire stock and all of its

bonds, which the committee distributed among the bondholders of the old corporation whom it represented according to their respective holdings. The assets of the reorganized corporation were placed on its books at what was deemed their proper value, the fixed assets at the cost at which they had been carried on the books of the predecessor corporation, less depreciation, the current assets at the figures at which they were carried on the books of the receivers, the cash as cash, and the notes and accounts receivable at their face less certain reserves for bad debts, and the inventories at cost or market value, whichever was lower. Thereafter, for the next seven months, the petitioner held and operated the properties. In its income tax return for that period it reported a net income, on which it paid an income tax. The Commissioner, on reviewing its accounts, made a deficiency assessment on the basis of the difference between the value of the assets the petitioner had received as determined by him and that placed by the petitioner on its books. On review before the Board of Tax Appeals the petitioner contended: (1) That the transaction constituted a reorganization under the income tax laws and did not give rise to taxable income; and (2) that if the transaction was not a reorganization, the capital value of the assets received was nevertheless the fair market value of those assets set up on its books and not the price paid for them by the committee at the decretal sale, which was the base value fixed by the Commissioner.

The primary inquiry is whether there was a reorganization. If there was, the question as to whether the petitioner or the Commissioner was correct in establishing a capital value for the assets acquired becomes unimportant.

The applicable statute is the Revenue Act of 1928 (45 Stat. 816, c. 852), § 112(b), 26 U.S.C.A. § 112(b) (3–5) and note:

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

Section 112 (i), 26 U.S.C.A. § 112(g) note:

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

The statutes in respect to reorganization have been under consideration by the Supreme Court in several cases with varying decisions as to whether they were or were not reorganizations. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 260, 77 L.Ed. 428; Helvering, Com'r v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 270, 80 L.Ed. 284; Nelson Co. v. Helvering, Com'r, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; and Helvering, Com'r, v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289.

In the Pinellas Case the corporation sold its property to another corporation for a money consideration partly paid in cash and partly in installments represented by short-

term notes. The court held that there was not a reorganization, but in discussing the case pointed out that the words in parentheses "including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation," "expand the meaning of 'merger' or 'consolidation' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation."

In the Minnesota Tea Company Case, a corporation transferred to another all of its assets in exchange for large sums in cash and 18,000 shares of the common stock of the transferee corporation. The transferor retained the stock and distributed the cash to its own stockholders but assumed certain of the transferee's debts. It was held that the transaction was a reorganization within the meaning of the words of the Revenue Act of 1928 "including the acquisition by one corporation of * * * substantially all the properties of another corporation," and further "that [although]· the relationship of the taxpayer to the assets transferred was substantially changed [that circumstance] does not prevent the transaction from constituting a reorganization under the Act," since the large amount of cash received was permissible so long as the transferor received also "an interest in the affairs of the transferee which represented a material part of the value of the transferred assets."

In the Watts Case the stockholders of a corporation exchanged all the stock of a corporation for stock and bonds in another corporation. The court held that there was a reorganization, distinguishing the case from the Pinellas Ice Company Case and pointing out, as held in the Minnesota Tea Company Case, that bonds are securities and not "other property" within the meaning of the statute.

In DeBlois v. Commissioner, 1 Cir., 36 F.2d 11, the court expressed the opinion that Congress did not intend to distinguish between voluntary and involuntary reorganizations, classing the latter as those effected in court proceedings, stating that Congress must have used the word "reorganization" in its generally accepted meaning, as reconstruction or rehabilitation.

In the case at bar neither the petitioner nor its stockholders received any profit from the reorganization. The predecessor corporation transferred all of its assets to the petitioner, and immediately after, the transferor, through its bondholders, was in control of the assets transferred. It makes no difference that the transaction was effected by the bondholders' committee, for that committee acted for and represented the bondholders in the old corporation, who became bondholders and stockholders in the reorganized corporation. Nor is it important that the committee represented no stockholders in the original corporation, since it did represent the bonds, which are securities as indicated in the Minnesota Tea Company and Watt Cases, supra. In our opinion there was a reorganization within the meaning of the statute. Where there is a reorganization there is no taxable gain in the transaction. In such case, too, the statute provides that the capital base for the reorganized corporation is the cost of the assets to the old corporation. Section 113(a) (7) and section 114(a) and (b) (1), of the Revenue Act of 1928, 26 U.S.C.A. §§ 113, 114 notes. It was accordingly error for the Board to establish the capital base on cost price paid at the decretal sale. All the assets, including the inventories and accounts receivable, were owned by the old corporation and were transferred to the new. It is not our province on this review to determine what their cost to the old corporation was in order to establish a base value for gain or loss on the inventory or for depletion and depreciation on the assets for the seven months here in question and for the future. Those are matters for administrative determination and must be made by the Board of Tax Appeals. To permit them to be made, the order of the Board is set aside and the cause remanded to it for a new hearing.

NOTE.—The late Circuit Judge MOORMAN died before he could revise this draft opinion which is in conformity with conference decision.