## COMMISSIONER OF INTERNAL REVENUE v. BONDHOLDERS COMMITTEE et al.

## SAME v. MARLBOROUGH HOUSE, Inc.

### Nos. 9602, 9603.

Circuit Court of Appeals, Ninth Circuit.

March 8, 1941.

Rehearing Denied April 17, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

Wm. Z. Kerr, R. B. Albertson, and Kerr, McCord & Carey, all of Seattle, Wash., for respondents.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

These two petitions to review decisions of the Board of Tax Appeals were consolidated for hearing and involve income taxes for the years 1933, 1934 and 1935. The facts are not in dispute.

The Marlborough Investment Company, a corporation, issued its bonds aggregating $500,000, secured by a trust deed on an apartment building known as Marlborough House and personal property therein. De-

faults occurred in the payment of principal and interest; the principal sum of $453,000 was unpaid. Shortly thereafter holders of these bonds amounting to $441,000 deposited their holdings with a committee under an agreement which gave it broad powers for working out and executing a plan for protecting their interests. Acting under this authority the committee caused the trustee to begin foreclosure proceedings upon the trust deed, formed a new corporation known as Marlborough House, Inc., to take over the property, gathered in an outstanding third party interest to clear the title, purchased the property at the foreclosure sale through a trustee or agent, and finally caused it to be conveyed by the purchaser to the new corporation in exchange for all of its stock.

The purchase price at the foreclosure sale was $340,425. This was paid partly in cash in the amount of $10,025, but mainly by the bonds deposited with the committee. Although the face value of these bonds was $441,000 their market value and the cash paid did not together exceed the purchase price.

Under a stipulation made during the pendency of the foreclosure proceedings possession was taken by an agent on behalf of the respondent Bondholders Committee on July 1, 1933, although the foreclosure sale did not occur until September 30, 1933. The agent managed Marlborough House on the Committee's account from the time of taking possession until November 20, 1933. The Committee made no return upon the income earned during this period; but, the Commissioner, holding that the Bondholders Committee while operating the property was an association taxable as a corporation upon income derived from such operation, made a deficiency assessment against it in the amount of $1,498.02 and added a penalty of 25%, amounting to $374.51, the whole assessment being $1872.53. The Committee appealed from his determination to the Board of Tax Appeals. The Board decided that there had been an over-assessment and that the deficiency amounted to but $136.45 with a corresponding 25% penalty of $34.11, a total of $170.56. From this decision appeal No. 9603 has been taken by the Commissioner.

Appeal No. 9603 concerns the income tax of the respondent Marlborough House, Inc., for the taxable period November 21, 1933, to December 31, 1933, and for the years 1934 and 1935 upon income derived from the operation of Marlborough House by the corporation after the transfer to it by the Bondholders Committee. The petitioner assessed a deficiency against respondent of $245.33 for 1933, of $441.76 for 1934, and of $1,120 for 1935. Upon appeal by the respondent the Board of Tax Appeals decided that there had been an overpayment of $10.79 for the year 1933, of $1,070.68 for 1934 and no deficiency for 1935. From this decision the Commissioner appealed.

The parties are agreed that their conflicting contentions as to the amount of income tax properly chargeable to each respondent on account of its operation of Marlborough House arise from their adoption of different bases for calculating the depreciation of the operating property. The petitioner held that the transactions whereby the Bondholders Committee first acquired the property and then transferred it to Marlborough House, Inc., did not amount to a tax-free reorganization within any of the exceptions recognized in § 112 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 511. He further held that therefore the true basis for calculating depreciation was, according to §§ 113, 114, of the Act, 26 U.S.C.A. Int.Rev.Acts, pages 514, 519, the amount bid at the time of acquisition of the property by the Bondholders Committee at the foreclosure sale on September 20, 1933. The Board, on the other hand, held that there was such a tax-free reorganization under § 112 of the said Act and, accordingly, that the true basis for calculating depreciation was, under §§ 113, 114, the original cost to Marlborough Investment Company.

One of the errors assigned by the petitioner is that the Board erred in finding that the various steps taken by the Bondholders Committee were in pursuance of a plan of reorganization. It may be assumed that if all that happened was a series of unrelated and unplanned happenings there would have been no such corporate reorganization as that recognized by § 112, Revenue Act of 1932, which seems clearly to contemplate action taken in pursuance of some definite plan. But this point has not been pressed and, as pointed out by the Board of Tax Appeals, what was done followed so closely a common practice in similar cases that the existence of a plan may well have been inferred by the Board.

In holding that there was such a reorganization the Board of Tax Appeals re-

lied mainly upon Commissioner v. Kitselman, 7 Cir., 89 F.2d 458, certiorari denied Kitselman v. Helvering, 302 U.S. 709, 58 S.Ct. 29, 82 L.Ed. 548, and Commissioner v. Newberry Lumber & Chemical Co., 6 Cir., 94 F.2d 447.

In the Kitselman and Newberry cases, as in the case at bar, the bondholders of an insolvent corporation, upon the surrender and exchange of their bonds, became the stockholders of a new corporation, to which, in accordance with a previously adopted plan, the assets of the old corporation purchased by the bondholders had been transferred by them. In the Kitselman case the court recognized that to effect a reorganization within the terms of § 112 of the Revenue Act of 1928, 26 U.S.C. A. Int.Rev.Acts, page 377, as construed by the Supreme Court in G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291, there must be a "continuity of interest of the transferor or its stockholders in the transferee", [89 F.2d 460] but, the court, notwithstanding the elimination of the stockholders of the transferror corporation, saw the requisite continuity in that corporation's bondholders. The court said, in part:

"Although the instant situation is rather novel in the aspect that neither the stockholders nor corporation participated in any way in the plan whereby the mortgage was foreclosed, the new company formed, and assets transferred to the committee and by it to the new company, we believe a statutory reorganization was effected. The only reason the stockholders did not participate in the plan was that their stock represented no assets and was valueless, and therefore they were without right to speak. In re 620 Church Street Corporation, 299 U.S. 24, 27, 57 S.Ct. 88, 81 L.Ed.[16].

"Bondholders are ordinarily viewed merely as auditors, but when the assets of the corporation are less than its obligations, the bondholders are in actuality and for all practical purposes pretty much the corporation."

It will be noted that the passage quoted assumes a controlling analogy between a reorganization under § 77B, 11 U.S.C.A. § 207 of the Bankruptcy Act, which was before the court in In re 620 Church Street Corporation, supra, and a reorganization within the exception recognized by §§ 112, 113, of the Revenue Act of 1932. But the validity of that assumption is open to serious doubt. The purpose of the reorganization contemplated in the Bankruptcy Act is the preservation of the bankrupt's property both for him and his creditors. When, as in the Church Street Corporation case, supra, the stockholders' equitable interest has disappeared owing to the insolvency of the corporation, reorganization may still be advantageous to the creditors and therefore within the policy of the Bankruptcy Act. On the other hand, the obvious purpose of § 112 of the Revenue Act of 1932 is to impose a tax upon a gain, or allow a deduction for a loss, upon the sale or exchange of property. But, to enable corporations or their stockholders to change the form or manner of conducting their business without being held to have transferred the business itself they are permitted under § 112, to make a tax-free reorganization. When, however, the corporation loses its property and the interest of the stockholders has been wiped out, as in the case at bar, the reorganization cannot effect the purpose of the exception.

The petitioner contends that these cases relied upon by the respondents have been in effect overruled by LeTulle v. Scofield, Collector, 308 U.S. 415, 60 S.Ct. 313, 84 L. Ed. 355. The facts in that case were in substance as follows: Le Tulle owned all the stock of a solvent irrigation company. A tri-party contract was made between him, the irrigation company and a solvent water company, whereby he undertook to obtain certain properties and convey them to the irrigation company and the latter agreed to convey thereafter all of its assets to the water company, for which the latter was to pay, and accordingly did pay, $50,000 in cash and $750,000 in its bonds. Subsequently, all of the assets of the irrigation company, consisting then of cash and bonds, were turned over to Le Tulle as a dividend, after which he caused the dissolution of the irrigation company. The irrigation company reported no gain on account of the cash and bonds received by it from the water company and Le Tulle reported no gain on account of the dividend received by him from the irrigation company. The Commissioner assessed to Le Tulle additional income taxes on account of both transactions. Le Tulle contended that this was a tax-free reorganization within the purview of § 112, Revenue Act of 1932; the Commissioner contended that there was merely a sale by the irrigation company to the water company for bonds and cash, followed by a dividend to Le Tulle. The Supreme Court affirmed the

judgment of the Fifth Circuit Court of Appeals, 103 F.2d 20, which had agreed with the Commissioner, and held that there had not been a tax-free reorganization. The requisite continuity of interest was lacking.

There is an obvious factual difference between the Le Tulle case and those relied upon by respondents. Commissioner v. Kitselman, supra; Commissioner v. Newberry L. & C. Co., supra. In the former the sole stockholder of one corporation, whose assets he causes to be transferred to another corporation, becomes the bondholding creditor of that other. In each of the other cases bondholders of one corporation, whose assets they caused to be transferred to another corporation emerge as a stockholder of the other corporation. But there is an equally obvious similarity. In each case all of the assets of one corporation are transferred to another. In each case the transferor corporation, along with its stockholders, loses all of its interest in the property transferred. But respondent contends that there is a further factual and decisive difference between the Le Tulle case, on the one hand, and the Kitselman and Newberry cases, on the other. It is pointed out that in the Le Tulle case there was no insolvent corporation; whereas in those cases, as in the instant case, the bondholders succeeded to the proprietary interest of the stockholders, so that, when the transfer occurred, their interest, though undergoing a change in form, was in substance continuous, thus satisfying the statute.

In deciding the Le Tulle case the Supreme Court was not unaware of either the Kitselman or Newberry case. While mentioning both without express approval or disapproval, the opinion used language broad enough to overrule both cases on principle, as clearly appears from the following excerpt [308 U.S. 415, 60 S.Ct. 316, 84 L.Ed. 355]: "Where the consideration is wholly in the transferee's bonds, or part cash and part such bonds, we think it cannot be said that the transferor retains any proprietary interest in the enterprise. On the contrary, he becomes a creditor of the transferee; and we do not think that the fact referred to by the Circuit Court of Appeals, that the bonds were secured solely by the assets transferred and that, upon default, the bondholder would retake only the property sold, changes his status from that of a creditor to one having a proprietary stake, within the purview of the statute."

■■ That this principle should be regarded as generally applicable in all cases in which the continuity of interest requisite for a reorganization within the terms of § 112, Revenue Act of 1932 is in question, seems fairly inferable from the decision in Helvering v. Tyng, 308 U.S. 527, 60 S.Ct. 378, 84 L.Ed. 445. The facts in that case, so far as here material, were substantially as follows. Barstow and Co., a corporation, owned a controlling interest in the stock of General Gas & Electric Corporation; but a controlling interest in the stock of Barstow & Co., was in turn owned by Barstow Securities Corporation, a majority of whose voting stock was owned by Tyng and associates. In pursuance of a plan whereby Associated Gas & Electric Co., another corporation, sought to obtain, and did obtain, a controlling interest in the stock of General Gas & Electric. Tyng and associates sold their stock in Securities to Associated, receiving therefor cash, bonds and debentures. The Commissioner held that the transaction was not a reorganization within the meaning of § 112(i) (1), 26 U.S.C.A. § 112, 26 U.S.C.A. Int. Rev.Acts, page 379, included the value of the obligations of Associated received by taxpayer Tyng and associates in their gross income for 1929, and determined certain tax deficiencies upon that basis. The Board of Tax Appeals held that the transaction was such a reorganization and reduced the deficiencies accordingly. The Circuit Court of Appeals of the Second Circuit held that the Board was right in holding that the transaction was a reorganization rather than a sale. In reaching its decision the court relied in part upon the Kitselman and Newberry cases, supra, upon which respondents chiefly rely in the cases at bar, endeavoring to distinguish them from the Le Tulle case. The Supreme Court granted certiorari and reversed the judgment upon the authority of Le Tulle v. Scofield, supra, thus holding that there was no continuity of interest.

Reversed.

MATHEWS, Circuit Judge (concurring in the result):

These are consolidated petitions to review decisions of the Board of Tax Appeals.[1] In No. 9602, the Commissioner of

---

Internal Revenue seeks reversal of a decision which redetermined the income tax liability of a bondholders committee[2] for 1933. In No. 9603, the Commissioner seeks reversal of decisions[3] which redetermined the income tax liability of Marlborough House, Inc., a corporation, for 1933, 1934 and 1935.

The Commissioner determined, and the Board agreed, that the committee, in computing its net income for 1933, was entitled to an allowance for depreciation of certain property—an apartment house in Seattle, Washington—which the committee acquired and transferred to Marlborough House, Inc., in 1933, and that Marlborough House, Inc., was entitled to an allowance for depreciation of the same property in computing its net income for each of the years 1933, 1934 and 1935. As to the basis on which such depreciation should be determined, the Commissioner and the Board did not agree. Hence, the question here is, What was the proper basis?

Section 23 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 489, provides that, in computing net income, certain deductions shall be allowed. One is specified in § 23(k): "A reasonable allowance for [depreciation][4] of property used in the trade or business." Section 23(m) provides that the basis on which depreciation is to be allowed shall be "as provided in section 114." Section 114 provides that the basis on which depreciation is to be allowed in respect of any property shall be "the adjusted basis provided in section 113

(b) for the purpose of determining the gain or loss upon the sale or other disposition of such property." Section 113(b) provides that the adjusted basis for determining such gain or loss shall be "the basis determined under subsection (a)," with specified adjustments. Subsection (a) provides that, with specified exceptions, the basis of property shall be "the cost of such property."

Thus, in each of the cases at bar, unless the case came within one of the exceptions specified in § 113(a), the basis of the property was the cost thereof to the taxpayer—the committee in No. 9602, Marlborough House, Inc., in No. 9603—with adjustments as provided in § 113(b).

The Board found—and its findings are not challenged—that the property here involved was purchased by the committee on September 30, 1933, at a sheriff's sale under a judgment foreclosing a mortgage securing bonds issued by Marlborough Investment Company,[5] a corporation, 97% of which were held by the committee; that the bonds so held were surrendered by the committee and accepted by the sheriff in part payment of the purchase price of the property; that the balance of the purchase price was paid in money; that Marlborough House, Inc., was organized on November 10, 1933; and that, thereafter, in 1933, the property was transferred by the committee to Marlborough House, Inc., in exchange for the latter's stock.

The Commissioner held that the committee's case (No. 9602) did not come within

---

[2] The committee calls itself "Bondholders Committee, Marlborough Investment Co., First Mortgage Bonds." Originally it consisted of Harvey Lantz, William D. Perkins and W. O. Bulette. Lantz died and was succeeded by T. H. Lovell. Subsequently Perkins died. The name of his successor, if any, is not disclosed.

[3] One relating to 1933, one relating to 1934 and 1935.

[4] In the statute, this is spoken of as an allowance for exhaustion, wear and tear, and obsolescence. See §§ 23(k), 23(m) and 114(a).

[5] The bonds were issued and the mortgage was executed on May 20, 1927. The mortgagor (Marlborough Investment Company) owned the property at that time, but, on December 31, 1928, transferred it to The F. S. Stimson Company (also known as Stimson-Moore Company), from which, by mesne conveyances, the title passed to State Developers, Inc., which, on May 13, 1932, transferred a one-half

interest therein to Russell L. Cooley. State Developers, Inc., and Cooley were the record owners of the property at the time of the foreclosure sale, but were not the actual owners; for theretofore, on July 1, 1933, they had executed and delivered to the mortgagee (The National Bank of Commerce of Seattle, Trustee) quitclaim deeds to the property for a consideration of $10,025 paid to them by the committee. At that time, no grantee's name appeared in either of the quitclaim deeds. It was agreed, however, that the name of a grantee might be inserted by the mortgagee or its attorneys. Accordingly, on September 28, 1933—long after the foreclosure sale—the name of R. C. Perkins, trustee for the committee, was inserted in each deed. The committee took possession of the property on July 1, 1933, and retained such possession until November 10, 1933, or shortly thereafter, when it transferred the property to Marlborough House, Inc.

any of the exceptions specified in § 113(a); that, therefore, the basis of the property in the hands of the committee was the cost thereof to the committee, with adjustments as provided in § 113(b); that the case of Marlborough House, Inc. (No. 9603) came within the exception specified in § 113(a) (8);[6] and that, therefore, the basis of the property in the hands of Marlborough House, Inc., was the same as it was in the hands of the committee, with adjustments as provided in § 113(b).

The Board did not, in terms, hold that either of the cases came within any exception specified in § 113(a). It did, however, hold in each case that the basis of the property in the hands of the taxpayer—the committee in No. 9602, Marlborough House, Inc., in No. 9603—was the same as it was in the hands of Marlborough Investment Company, less the depreciation already taken by the Investment Company; and, in support of its holding, cited § 113(a) (6).[7] I assume, therefore, that the Board intended to, and did in effect, hold that each case came within the exception specified in § 113(a) (6).

Section 113(a) (6) applies only to property acquired upon an exchange described in § 112(b) to (e), inclusive. The Board did not, in terms, hold that the property here involved was acquired by either of the taxpayers upon an exchange described in § 112(b) to (e), inclusive. It did, however, in support of its holding, cite § 112(b) (3).[8] I assume, therefore, that the Board intended to, and did in effect, hold that the property was acquired by each of the taxpayers upon an exchange described in § 112(b) (3).

Section 112(b) (3) describes an exchange of stock or securities for stock or securities —an exchange whereby "stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." It does not describe any other exchange. The Board did not find, and upon the evidence could not have found, that the property here involved was acquired by either of the taxpayers upon an exchange of stock or securities for stock or securities. Instead, the Board found, as upon the evidence it was compelled to find, that the property was acquired by the committee upon an exchange of bonds and money for the property and by Marlborough House, Inc., upon an exchange of stock for the property —property which was neither stock nor securities, but an apartment house. No such exchange is described in § 112(b) (3).

Although, as stated, the Board did not find that either of the exchanges here involved was an exchange of stock or securities for stock or securities, it did find that both exchanges were made in pursuance of a plan of "reorganization," as defined in § 112(i). Thereupon the Board concluded that each of the exchanges must necessarily be an exchange described in § 112(b) (3).[9]

---

[6] Section 113(a) (8) provides: "If the property was acquired after December 31, 1920, by a corporation * * * by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) * * * then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made." Section 112(b) (5) provides: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation * * *."

[7] Section 113(a) (6) provides: "If the property was acquired upon an exchange described in section 112(b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received

by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. * * *"

[8] Section 112(b) (3) provides: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

[9] The Board's opinion states [40 B.T. A. 889]: "Holding as we do that there was here a reorganization within the meaning of sections 112(b) (3) and 112(i), Act of 1932, it follows that the basis for depreciation in the hands of [the taxpayers] will be the same as that in the hands of the predecessor corporation, the Marlborough Investment Co., less the depreciation already taken by such predecessor. Sec. 113(a) (6), Act of 1932."

In this the Board erred. For it is not true that every exchange made in pursuance of a plan of reorganization is an exchange described in § 112(b) (3). It is, of course, true that an exchange not made in pursuance of a plan of reorganization is not an exchange described in § 112(b) (3). It is equally true, however, that an exchange which is not an exchange of stock or securities for stock or securities is not an exchange described in § 112(b) (3). Since, as I have shown, neither of the exchanges here involved was an exchange of stock or securities for stock or securities, it is, for present purposes, immaterial whether they were or were not made in pursuance of a plan of reorganization. I accordingly leave that question undecided.

If it were true, as it is not, that the exchanges here involved were exchanges described in § 112(b) (3), these cases would then be within the exception specified in § 113(a) (6); but it still would not follow that the basis of the property in the hands of the taxpayers or either of them would be the same as it was in the hands of Marlborough Investment Company, less the depreciation already taken by the Investment Company. Section 113(a) (6) lays down no such rule. It provides that the basis of property acquired upon any exchange therein mentioned shall be the same as in the case of the "property exchanged,"[10] increased or decreased as specified.[11] In the committee's case, the "property exchanged" was bonds; in the case of Marlborough House, Inc., it was stock. The Board disregarded the basis thus prescribed and adopted a basis which, upon its own theory, was wrong.

The Board did not hold, nor do the taxpayers contend, that either of the exchanges here involved was an exchange described in § 112(b) (1), (b) (2), (b) (4), (b) (5), (c), (d) or (e). The implied holding[12] that they were exchanges described in § 112(b) (3) was, as I have shown, inconsistent with the findings and contrary to the evidence. There was, therefore, no basis for holding that these cases or either of them came within the exception specified in § 113(a) (6). The Board did not hold, nor do the taxpayers contend, that either of the cases came within any of the other exceptions specified in § 113(a). In each of the cases, therefore, the Commissioner's determination as to the basis of the property should have been, and is by me, accepted as correct.

Commissioner v. Kitselman, 7 Cir., 89 F. 2d 458, and Commissioner v. Newberry Lumber & Chemical Co., 6 Cir., 94 F.2d 447, cited by the Board, are readily distinguishable from the cases at bar. No question of depreciation was involved in either of the cited cases. In the Kitselman case, the question was whether the taxpayer was entitled to deduct a loss said to have been sustained upon an exchange whereby the taxpayer exchanged bonds of one corporation for stock and bonds of another corporation. The court held that the bonds of each corporation were securities; that the exchange was made in pursuance of a plan of reorganization to which both corporations were parties; and that, therefore, the loss was not deductible—citing § 112(b) (3). The court did not hold or intimate that an exchange of stock or securities for property other than stock or securities would be an exchange described in § 112 (b) (3).

In the Newberry case, the question was whether the taxpayer (a corporation) should have included as part of its taxable income gains said to have resulted from an exchange whereby real property was transferred to the taxpayer by a bondholders' committee solely in exchange for stock and bonds of the taxpayer, and immediately after the exchange the committee was in control of the taxpayer. The court held that the bonds were securities, and that the gains were not taxable, citing § 112(b) (5). The court also held that the exchange was made in pursuance of a plan of reorganization, and cited § 112(b) (3) and (b) (4). The last mentioned holding and citations were superfluous. For if the bonds were securities, the exchange there involved— whether made in pursuance of a plan of reorganization or not—was an exchange described in § 112(b) (5), and the gains were, for that reason, not taxable. If the bonds

---

[10] Meaning, of course, the property which was exchanged for the property whose basis is to be determined. The "property exchanged" may be stock, bonds or other property.

[11] See footnote 7.

[12] Implied from the fact that the Board cited § 112(b) (3) in support of its holding that the basis of the property in the hands of each taxpayer was the same as it was in the hands of Marlborough Investment Company, less the depreciation already taken by the Investment Company.

were not securities, the exchange was not an exchange described in § 112(b) (3), (b) (4) or (b) (5), and the whole case was wrongly decided. I do not construe the decision as holding that an exchange of stock or securities for property other than stock or securities is an exchange described in § 112(b) (3). If it does so hold, it is clearly wrong and should not be followed.

Whether or to what extent, if at all, the Kitselman and Newberry cases have been overruled by LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, and Helvering v. Tyng, 308 U.S. 527, 60 S.Ct. 378, 84 L.Ed. 445, we have no occasion to decide.

The decisions should be reversed.