## D. W. KLEIN CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7634.

Circuit Court of Appeals, Seventh Circuit.

Nov. 28, 1941.

Frederick V. Arber, of Peoria, Ill., and Richard S. Doyle, of Washington, D. C., for petitioner.

J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Harry Marselli, Sp. Asst. Atty. Gen., for respondent.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This petition for review of a decision of the Board of Tax Appeals presents the question of the correctness of (1) the determination by the Board that a certain series of transactions whereby the taxpayer acquired title to certain assets formerly the property of the Royal Cloak Company did not constitute a non-taxable statutory reorganization under the provisions of §§ 112(i)(1)(B) and 113(a)(7) of the Revenue Act of 1932 [26 U.S.C.A. Int.Rev. Acts, pages 513, 514], and (2) the computation of the tax which followed that decision.

Three corporations, including petitioner, were involved in the alleged non-taxable reorganization: The Royal Cloak Company, an Iowa corporation, organized in 1916 to sell wearing apparel; the Klein Clothing Company, an Illinois corporation all of whose stock except two qualifying shares belonged to the Royal Company; and petitioner, the D. W. Klein Company, organized in 1932 pursuant to the plan here involved. The outstanding common stock of the Royal Company all belonged to five brothers, and the 450 shares of Class A preferred stock outstanding which carried no voting rights, belonged to Mrs. Klein, wife of one of the brothers. The company operated stores in eleven cities in Iowa and Illinios. Its subsidiary was engaged in the men's clothing business in Peoria, operating in the store occupied by the Royal Company.

In 1930, following operating losses, the Royal Company closed two of its stores and sold a third, and in 1931 it closed another. It was desirous of closing four other stores but was unable to do so because of its liability under leases which it was unable to have cancelled. It therefore determined upon a plan of reorganization, and acting on advice of counsel it executed a common law assignment of its assets for the benefit of creditors, to Harry Frankel as trustee. Shortly thereafter it was learned that some of its creditors planned to file a petition in bankruptcy against it in Iowa.

Being anxious that the affairs of the company be administered in Peoria, Illinois, its principal place of business, its officers filed a voluntary petition in bankruptcy there, and Frankel, the assignee for benefit of creditors, was appointed receiver to take charge of the assets and continue operation of the stores. He later became trustee. Schedules filed by the bankrupt showed assets of $341,571 as against liabilities of $220,596. Frankel closed all but two stores, located at Peoria and Burlington, prior to January 25 and sold all the assets of the closed stores except some of their accounts receivable. On January 25 and 26, he offered for sale at public auction the assets of the Royal Company consisting of these accounts receivable and those of the Peoria and Burlington stores, along with the merchandise, stock and fixtures of those two stores. They were bid in by an agent of Mrs. Klein for $45,625. On January 27, the trustee offered for sale the balance of the Royal assets consisting of the 348 shares of stock of the Klein Company, and these also were bid in by Mrs. Klein's agent, for $6,500. Both of these bids were

approved by the court. On January 31, the agent assigned to Mrs. Klein all his interest in the bids, whereupon she assumed liability for payment thereon, paying the trustee $20,000 in cash and giving him her notes for the balance of $32,125.

The D. W. Klein Company, taxpayer and petitioner here, was organized in February, 1932, and on February 25, Mrs. Klein executed to it a bill of sale of all the assets purchased at the bankruptcy sale. In consideration, she received its stock of the par value of $52,125, and petitioner agreed to pay the balance due on the purchase price of the assets, $32,125. Thereafter, petitioner paid her the amount due on her notes, and she in turn paid it over to the bankruptcy trustee.

The taxpayer contends that this series of transactions whereby the preferred stockholder of the bankrupt acquired all the assets of the bankrupt at a public sale and thereafter transferred all those assets to it, a newly organized corporation, in exchange for all of its capital stock and its assumption of liability on her notes for the balance due on the bankruptcy assets, constituted a non-taxable reorganization under the purview of § 112 of the Revenue Act, hence that the cost basis for computing gain or loss and depreciation should be the same as it was in the hands of the bankrupt rather than the price paid at the bankruptcy sale. It vigorously urges the intent of the parties and points to the testimony of their counsel that he advised them to proceed as they did in order to continue the business as a going concern, retaining the good will and making it easier to collect outstanding accounts receivable; he also testified that all that was done in connection with the organization of the taxpayer was pursuant to the plan of reorganization of the Royal Cloak Company.

■ This court has held that a reorganization, non-taxable under the provisions of section 112, may be effected through the medium of a foreclosure sale or proceedings in bankruptcy. Such was our conclusion in the cases, Commissioner v. Kitselman, 7 Cir., 89 F.2d 458, certiorari denied, 302 U.S. 709, 58 S.Ct. 29, 82 L.Ed. 548; Rex Mfg. Co. v. Commissioner, 7 Cir., 102 F.2d 325, upon both of which petitioner relies. However, to say that a non-taxable reorganization may be so effected is not to say that every reorganization brought about by means of such proceedings is non-taxable.

In the Kitselman case, the corporation was insolvent, and the bondholders were, therefore, held by this court to supersede the stockholders under the doctrine of In re 620 Church Street Bldg. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16. Hence it was held that a reorganization resulted from the carrying out of a plan whereby those bondholders, upon surrender of their bonds, became the holders of stock and bonds of a new corporation to which the assets of the old corporation had been transferred after a judicial sale as contemplated by the plan. Accordingly the taxpayer, one of the bondholders, was not permitted to deduct from his gross income the loss sustained in the exchange of his bonds for the securities of the new corporation.

In the Rex case, the stockholders of a corporation having assets considerably in excess of its liabilities, but which assets were mostly frozen, determined upon a plan of reorganization whereby creditors of the corporation received 25% of their claims in cash and the balance in bonds of a new corporation organized to take over the assets which were transferred by a nominee who purchased them at a bankruptcy sale. Stockholders of the old became the holders of 77.78% of the stock of the new. The Rex case involved the construction and applicability of subsection (1)(A) of section 112(i) of the Revenue Act of 1928 which defines the term reorganization as "* * * a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *". 26 U.S. C.A. Int.Rev.Acts, page 379. It held that there was sufficient continuity of interest on the part of stockholders of the old corporation in the new corporation to satisfy the definition.

In the Kitselman case, the court did not state whether the situation defined in Clause A or B of section 112(i)(1) was involved, calling attention to the fact that the two might overlap a bit, as indicated by Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284. It held, however, that since "the essence of the corporate life—all its assets—were transferred by its bondholders to a new corporation in exchange for that corporation's stocks and bonds" [89 F.2d 461], a statutory reorganization had occurred, regardless of the total

lack of participation on the part of stockholders of the transferor corporation.

In the case at bar we have squarely presented, the question whether the facts fall within the definition of reorganization provided by clause B: "a transfer *by a corporation* of all or a part of its assets *to another corporation* if immediately after the transfer the *transferor or its stockholders* or both are in control of the corporation to which the assets are transferred * * *." (Our italics). It seems clear that the transfer here was not one by a corporation to a corporation. On the contrary, what occurred was a conveyance by the trustee in bankruptcy of the old corporation of all the assets to an individual who was the highest bidder at a public sale. The bankrupt corporation at the time of the sale no longer was in a position to determine to whom its assets should be transferred, or what disposition should be made of the proceeds of the sale. We agree with the statement of the Board that there was no plan of reorganization carried through which included a continuation of the interests of the Royal Cloak Company or its stockholders in the petitioner, and that Mrs. Klein acted for herself alone.

It may be important to note the purpose of the proceeding here involved, which was not to obtain new capital nor to obtain an extension of time for paying debts, but instead, was to extinguish liability on a certain class of obligations, those arising out of burdensome leaseholds which the corporation was unable to have cancelled. In the Kitselman case, the first mortgage bondholders who were held to be in fact the owners, under the doctrine of In re 620 Church Street Bldg. Corp., supra, received stock and bonds of the new corporation; in the Rex case, all creditors received bonds in the new corporation, presumably secured by the assets of the new corporation which had been delivered to it by the old corporation pursuant to plan. In the case at bar, however, there was no carrying over of claims of creditors or stockholders. The assets were put up at public auction by the trustee and sold to the highest bidder who paid part cash and the balance by her notes. The fact that she incidentally happened to be the holder of all the outstanding preferred stock in the bankrupt corporation does not alter the fact that the affairs of that corporation were completely liquidated by the bankruptcy proceedings. It appears to have had no secured creditors; the unsecured creditors received about 30% of their claims, and the assets of the old corporation were acquired by the new, unencumbered by the legal obligations against them in the hands of the old. Cf. Mascot Stove Co. v. Commissioner, 6 Cir., 120 F.2d 153. See also Randolph Paul, Studies in Federal Taxation, 3rd Series (1940) at page 161.[1]

■■ It is further to be noted that Mrs. Klein's position as sole stockholder in the new corporation (with the exception of one share apiece which she directed the new corporation to issue to the common stockholders of the old corporation presumably as qualifying shares) bears no relation to her status as preferred stockholder in the old, but arises solely out of her delivery to the new corporation of certain properties purchased by her at the bankruptcy sale. The discussion among the stockholders before the proceedings were determined upon, and their decision to initiate them as a part of what they called a plan of reorganization, acting upon advice of counsel, does not alter the character of those proceedings as actually carried out. We therefore conclude that the taxpayer was a new enterprise rather than a legal continuation of the Royal Cloak Company, hence that the basis for computing gain or loss and depreciation was not that of the Royal Company.[2]

[1] "* * * But a mere purchase of assets at a bankruptcy sale does not constitute a reorganization, at least in a case in which there is no participation in a plan by the old company, the only plan being that of certain stockholders acting not as such, but as individuals. Therefore, if the creditors or shareholders bid in the assets of the old corporation without any continuous plan to reincorporate, there would be a closed transaction, rather than a reorganization."

[2] Our attention has been called to four cases now pending before the Supreme Court: Commissioner v. Southwest Consol. Corp., 5 Cir., 119 F.2d 561; Commissioner v. Alabama Asphaltic Limestone Co., 5 Cir., 119 F.2d 819; Commissioner v. Palm Springs Holding Corp., 9 Cir., 119 F.2d 846; and Commissioner v. Bondholders Committee, 9 Cir., 118 F.2d 511. However, all these cases are more of the Kitselman or Rex type, involving representation of the old company in the new by creditors or bondholders. We are of the opinion that resolution of the conflict of decision in the four cases by the Court will not govern the decision

Having determined that petitioner is not entitled to the cost basis provided in the case of a non-taxable reorganization, we turn to the sections of the Revenue Act which we think controlling. § 112(b)(5) covers the situation where property is transferred to a corporation by a person solely in exchange for stock or securities in such corporation, and immediately after the exchange such person is in control of the corporation. It provides that in such case, no gain or loss shall be recognized. § 113 provides that the basis of property shall be its cost, except that if property is acquired after 1920, by issuance of stock in connection with a transaction described by § 112(b)(5), as here, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer applicable to the year in which the transfer was made. Petitioner contends "in the alternative, that if there was not a reorganization, the assumption of the notes for $32,125 was the equivalent of cash and D. W. Klein realized a gain which was recognizable as income to her to the extent of the cash payment under § 112(b)(5) and (c)(1)[3] of the Revenue Act of 1932, and that therefore petitioner's basis should be determined to be the cost basis of the assets in the hands of its transferor ($52,-125), increased by the gain ($32,125) recognized to her, as provided by § 113(a)(8) of the Revenue Act of 1932."

The Supreme Court decided in United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018, that the assumption of indebtedness of the transferor by the transferee corporation constituted other property or money, rendering the gain inuring to the transferor thereby, taxable to the transferor. However, following the decision of this case in March, 1938, Congress enacted as a part of the Revenue Act of 1939, the following provision:

Sec. 213(f)(1). "Where upon an exchange occurring in a taxable year ending after December. 31, 1923, and beginning before January 1, 1939, the taxpayer received as part of the consideration property which would be permitted by subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as 'other property or money' received by the taxpayer within the meaning of subsection (c), (d), or (e) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, and shall not prevent the exchange from being within the provisions of subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts; except that if, in the determination of the tax liability of such taxpayer for the taxable year in which the exchange occurred, by a decision of the Board of Tax Appeals or of a court which became final before the ninetieth day after the date of enactment of the Revenue Act of 1939, or by a closing agreement, gain was recognized to such taxpayer by reason of such assumption or acquisition of property, then for the purposes of section 112 of the Revenue Act of 1938, and corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, such assumption or acquisition (in the amount of the liability considered in computing the gain) shall be considered as money received by the taxpayer upon the exchange."

(2) "Paragraph (1) shall be effective with respect to the Revenue Act of 1924 and subsequent revenue Acts as of the date of enactment of each such Act." 26 U.S. C.A. Int.Rev.Acts, page 1177.

Petitioner seeks to avoid the operation of this provision, contending that, "The provisions of Sec. (f)(2), which prescribes that paragraph (1) shall be effective with respect to the revenue act of 1924 and subse-

---

of the case at bar under the facts here involved.

3 Sec. 112(c) (1). "If an exchange would be within the provisions of subsection (b) * * * (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

quent revenue acts as of the date of *enactment of each such act,* applies only to the section of the statute described in paragraph (1) thereof, which refers solely to the basis." We find nothing in the enactment implying such limitation, and agree with the Board that it does govern the determination here. Since there is no showing that the gain involved in the assumption by the taxpayer of her obligation to pay the $32,125, was recognized by Board or court decision or by closing agreement prior to the enactment of § 213, the exception provided therein does not come into operation, hence the basis remains as provided in § 113, the cost in the hands of the transferor, which was $52,125.

■ Petitioner also contends that inasmuch as the returns of all the parties involved in the so-called reorganization, including both corporations and Mrs. Klein, were made on the basis of a non-taxable reorganization, it should be permitted to show that for the year 1932, any gain which might have been taxable to Mrs. Klein was more than offset by the losses sustained by her in that year, including the $45,000 of her investment in the preferred stock of the Royal Cloak Company. We think the Board was not and may not now be required to take these facts into account.

■■ A further question arises as to the deductibility of certain items claimed by petitioner to have been ordinary and necessary business expense, or, in the alternative, additional cost of goods. These items, aggregating $7,909, were all payments made to creditors who had filed claims in the bankruptcy proceedings against the Royal Company. Most of them were made to establish good will and lines of credit for the new corporation from merchandising concerns which had sold goods to the old; one was to a bank which had extended credit to the old; one was to a public utility for service furnished to the Royal Company. As to all the items the Board held that they represented liabilities incurred by a person other than the taxpayer, and inasmuch as it had no legal ob-ligation to pay them, it could not deduct them as ordinary and necessary expenses. We agree with this conclusion, on the authority of Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. Although petitioner seeks to distinguish the facts of that case, it involved payments in fact very similar in character to the ones here involved. The Court held that while those payments might have been necessary, they were not ordinary, but were more in the nature of capital expenditures which the taxpayer was not entitled to deduct from his gross income. Nor may we permit the deduction of amounts paid in order to obtain credit for the purchase of goods or services as additional cost of those items when the amounts so paid arise out of claims for earlier purchases rather than from anything in the goods themselves.

■ Petitioner further challenges a recomputation of the deficiency in tax made by the Board for the fiscal year ending January 31, 1933, resulting from the addition to income of $19,824 for that year, designated as inventory adjustment. This recomputation was necessitated by a reallocation of costs. In the Commissioner's original allocation, he had divided the costs between inventory, and furniture and fixtures, allocating no part of the costs to accounts receivable. In its decision, the Board had held that this was error, and that the amount of $45,625, the cost basis for petitioner for the assets formerly owned by the Royal Company, should be divided between the three items instead of two. This required a re-examination of the entire cost basis and items of income arising from each. Since the total cost basis was fixed, it was necessary to readjust that basis between all items to be computed. In allowing for accounts receivable it was necessary to reduce the amount formerly allowed by the Commissioner for inventory, hence income from inventory was correspondingly increased. We find no error in the action of the Board in the method or the result of its recomputation.

Decision affirmed.