BANCO DE PONCE, demandante y recurrente, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

Número 11650.

*Sometido:* 3 de abril de 1959. *Resuelto:* 5 de junio de 1959.

*Luis E. Dubón* y *R. García Cintrón,* abogados del recurrente; *Hon. Secretario de Justicia Hiram R. Cancio (José Trías Monge, ex-Secretario de Justicia,* en el alegato) y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR SERRANO GEYLS emitió la opinión del Tribunal.

No hay controversia en cuanto a los hechos de este recurso. Durante los años 1945, 1946, 1947, 1948 y 1949, el Banco de Ponce compró bonos del gobierno federal de los Estados Unidos para utilizarlos como garantía colateral de depósitos de fondos públicos. Al adquirirlos tuvo que pagar ciertas cantidades por concepto de primas (*premium*). En los años de

1948 y 1949 el Banco tuvo que vender esos bonos y perdió en 1948 la suma de $142,139.15 y en 1949 la de $22,779.75, ambas del monto de las primas.  En sus declaraciones de ingresos para esos años, la corporación bancaria dedujo dichas cantidades de su ingreso bruto.  El Secretario de Hacienda rechazó esas deducciones y comunicó al Banco las deficiencias correspondientes.  El contribuyente impugnó esas deficiencias ante el Tribunal Superior, y éste, luego de los trámites de ley, dictó sentencia en favor del Secretario.

En apelación el Banco sostiene que las mencionadas cantidades son deducibles de su ingreso bruto, bien como una "pérdida", de acuerdo con la sec. 32 (a) (4) de la Ley de Contribuciones sobre Ingresos de 1924—13 L.P.R.A. sec. 735 (4)—o en la alternativa, como "depreciación o amortización" de las primas pagadas, según lo dispuesto en la sec. 32 (a) (6) de dicha Ley—13 L.P.R.A. sec. 735 (6).

La sec. 32 (a) (4) disponía en su redacción original que al computar el ingreso neto de una corporación se admitirían como deducciones: "Pérdidas sufridas durante el año contributivo y no compensadas por seguro o en otra forma.  No se concederá deducción a virtud de este párrafo por pérdidas que se alegue han sido sufridas en la venta u otra disposición de acciones o valores, cuando dentro de 30 días antes o después de la fecha de dicha venta u otra disposición el contribuyente ha adquirido propiedad de otro modo que no sea por legado o herencia, o ha entrado en algún contrato u opción para adquirir substancialmente propiedad idéntica, y la propiedad así adquirida es retenida por dicho contribuyente durante cualquier período después de dicha venta o disposición, a menos que dicha reclamación fuere hecha por un traficante en acciones o valores y se refiera a una transacción hecha en el curso ordinario de sus negocios.  Si tal adquisición o el contrato u opción para adquirir se refiere solamente a parte de la propiedad substancialmente idéntica, entonces sólo una parte proporcional de la pérdida no será admitida como deducción.  La base para determinar el montante de la.

deducción por pérdidas sufridas será la misma que se provee en la sección 7 para determinar la ganancia o pérdida derivada de la venta u otra disposición de propiedad;" (Leyes 1925, pág. 479).

Al enmendarse esa sección en 1941 las dos primeras oraciones, de especial pertinencia en este caso, se redactaron así: "Pérdidas sufridas durante el año contributivo y no compensadas por seguro o en otra forma. No se concederá deducciones a virtud de este párrafo por pérdidas que se alegue han sido sufridas en la venta u otra disposición de acciones o valores, excepto aquellas pérdidas que compensen las ganancias obtenidas durante el año contributivo como resultado de ventas u otra disposición de acciones o valores." (Leyes 1941, pág. 521.)

La corporación recurrente no niega, ni está en posición de negar, que la frase "acciones y valores", utilizada en las citadas secciones, incluya los bonos adquiridos por ella. *González v. Wys*, 34 D.P.R. 414, 417 (1925); *Commissioner of Internal Revenue v. Neustadt's Trust*, 131 F.2d 528, 529 (2do. Cir. 1942); *Commissioner of Internal Revenue v. Newberry L. & C. Co.*, 94 F.2d 447 (6to. Cir. 1938); *Commissioner of Internal Revenue v. Kitselman*, 89 F.2d 458, 460 (7mo. Cir. 1937); *Lilienthal v. Commissioner of Internal Revenue*, 80 F.2d 411, 413 (9no. Cir. 1935); 3 Mertens, *The Law of Federal Income Taxation* (ed. rev. Zimet y Weiss), sec. 20.67, pág. 239; 5 Mertens, *op. cit.* sec. 2860, pág. 205, escolio 58. Nos remite, sin embargo, a la sec. 16(a) (4), aplicable a los individuos, y nos indica que ésta debe examinarse conjuntamente con la sec. 32(a) (4) para así obtener una interpretación correcta de dicha frase.

En su versión original la sec. 16(a) (4) concedía a los individuos una deducción por "Pérdidas sufridas durante el año contributivo y no compensadas por seguro, o en otra forma, siempre que hubieren ocurrido en alguna industria o negocio." (Leyes, 1925, pág. 441). El inciso (5) de esa misma sección también permitía a los individuos deducir de

su ingreso bruto las pérdidas no compensadas que hubieren ocurrido "en cualquier operación con fines de lucro, aunque no estén relacionadas con la industria o negocio . . ." Y añadía: "No se concederá deducción a virtud de este párrafo por pérdidas que se alegue haber sido sufridas en la venta u otra disposición de acciones o valores cuando aparezca que dentro de 30 días antes o después de la fecha de dicha venta u otra disposición el contribuyente ha adquirido (de otro modo que no sea por legado o herencia) o ha realizado en algún contrato u opción para adquirir substancialmente propiedad idéntica, y la propiedad así adquirida es retenida por el contribuyente durante cualquier período después de dicha venta o disposición." (Leyes 1925, pág. 441.)

En 1941, y mediante la misma ley que enmendó la sec. 32 (a) (4), la Asamblea Legislativa aprobó la siguiente nueva versión de la sec. 16 (a) (4) y (5); (4) "Pérdidas sufridas durante el año contributivo y no compensadas por seguros, o en otra forma, siempre que hubieren ocurrido en alguna industria o negocio. Las pérdidas bajo este inciso y los incisos cinco y seis de esta sección, podrán ser deducidas solamente en el año contributivo en que han sido realmente sufridas. No serán deducibles las pérdidas, bajo este inciso o bajo los incisos (5) y (6) de esta sección, si son sufridas en virtud de ventas o permutas de bienes, ya sea directa o indirectamente, (a) entre miembros de una familia o (b) con excepción de distribuciones en liquidación, entre un individuo y una corporación con respecto a la cual el individuo sea dueño directa o indirectamente, de más del cincuenta por ciento (50%) del valor de las acciones emitidas (*outstanding stock*) o (c) con excepción de distribuciones en liquidación, entre dos corporaciones con respecto a las cuales un mismo individuo o corporación sea dueño o dueña, directa o indirectamente de más del cincuenta por ciento (50%) del valor de las acciones emitidas (*outstanding stock*) de cada una de dichas corporaciones, o (d) son dos corporaciones, una de las cuales es dueña directa o indirectamente de más del cincuenta

por ciento (50%) del valor de las acciones emitidas (*outstanding stock*) y de la otra corporación. Para los fines de este inciso, un individuo debe ser considerado como dueño de las acciones que pertenezcan, directa o indirectamente, a su familia, entendiéndose por 'familia', a los fines de este inciso, los parientes hasta el cuarto grado de consanguinidad o afinidad. No serán deducibles las pérdidas bajo este inciso o bajo los incisos (5) y (6) de esta sección, que hayan sido sufridas en virtud de ventas o permutas de acciones, bonos o valores, excepto aquellas pérdidas que compensen las ganancias obtenidas durante el año contributivo como resultado de tales ventas o permutas.

(5) "Pérdidas sufridas durante el año contributivo y no compensadas por seguro, o en otra forma, siempre que hubieren ocurrido en cualquier operación con fines de lucro, aunque no estén relacionadas con la industria o negocio; pero en el caso de un individuo no residente, que no sea ciudadano de Puerto Rico, solamente si el beneficio, si ha habido beneficio como resultado de dicha operación, fuere tributable a virtud de este título. No se concederá deducción a virtud de este párrafo por pérdidas que se alegue haber sido sufridas en la venta u otra disposición de acciones o valores cuando aparezca que dentro de treinta (30) días antes o después de la fecha de dicha venta u otra disposición el contribuyente ha adquirido (de otro modo que no sea por legado o herencia) o ha realizado en algún contrato u opción para adquirir sustancialmente propiedad idéntica, y la propiedad así adquirida es retenida por el contribuyente durante cualquier período después de dicha venta o disposición. Si tal adquisición o el contrato u opción para adquirir se refiere solamente a parte de la propiedad sustancialmente idéntica, entonces únicamente una parte proporcional de la pérdida será rechazada como deducción." (Leyes 1941, págs. 499 y 501.)

El recurrente compara los textos de las secs. 16(*a*)(4) y 32(*a*)(4) según se aprobaron en 1941 y observa que en la primera se reglamenta la deducción por los *individuos* de pér-

didas sufridas en la venta u otra disposición de "acciones, bonos o valores" mientras que en la segunda se reglamenta (¹) la deducción por las *corporaciones* de pérdidas sufridas en la venta u otra disposición de "acciones o valores". Sostiene que al mencionar específicamente la palabra "bonos" en una y no hacerlo en la otra, el legislador evidenció el propósito de excluir tales "bonos" de la reglamentación aplicable a las corporaciones. Nos cita el conocido principio de que el uso de lenguaje distinto en diversas secciones de una misma ley indica que se usa con propósitos distintos, y también nos pide utilizar la norma, aplicable a las leyes contributivas, de resolver las dudas en favor del contribuyente. Se apoya principalmente en *Comunidad Fajardo* v. *Tribunal de Contribuciones*, 73 D.P.R. 543 (1952).

A poco que se reflexione sobre el problema se observará que el recurrente pretende demasiado. Primero, no nos muestra, ni hemos podido encontrar, razón alguna en derecho, economía o administración que explique tal privilegio en favor de las corporaciones. Nunca se consignó en las leyes locales anteriores y posteriores a 1941 ni tampoco en la legislación federal, que como es sabido, sirve de patrón a la nuestra. Segundo, en la sec. 16(*a*)(5), aplicable también a individuos, y también enmendada en 1941, el legislador utilizó la frase "acciones y valores" al prohibir la deducción por pérdidas en ventas simuladas (*wash sales*). Si se aceptara la interpretación del recurrente, con mayor razón en este caso habría que excluir a los bonos de los efectos de esa prohibición, aun cuando tampoco existe motivo alguno para ello ni nunca han sido excluídos de nuestra legislación ni de la federal. 5 Mertens, *op. cit.*, supra, sec. 28.60–28.61, págs. 203–211; Henderson, *Introduction to Income Taxation*, (1943) pág. 221. Tercero, idéntica posición habría que asumir en cuanto

---

(¹) El recurrente nos dice que la ley "prohibe" esas deducciones. Como podrá observarse de la lectura de las secciones arriba transcritas la ley permite una deducción de las pérdidas que tiene por límite el monto de la ganancia realizada durante el año en operaciones similares. Arabía, Manual de Contribución Sobre Ingresos, sec. 16.6, pág. 226 (1948).

al párrafo (*a*) (2) de la propia sec. 16, también incluído en la Ley de 1941, que concede una deducción por intereses pagados o vencidos sobre deudas, "excepto sobre deudas incurridas o continuadas para comprar o poseer obligaciones, títulos o valores . . . cuyos intereses están totalmente exentos de contribución . . ." y que, como se ve, no menciona expresamente a los "bonos". Sabemos, sin embargo, que los bonos están incluídos en la frase general. 4 Mertens, *op. cit.*, sec. 26.13, págs. 58–60. Cuarto, tanto en lo que se refiere a las secs. 16 (*a*) (4) y 16 (*a*) (5) como a la 32 (*a*) (4) la ley expresamente provee que "la base para determinar el montante de la deducción será la misma que la dispuesta en la Sección 7 . . . para determinar la ganancia o pérdida derivada de la venta u otra disposición de propiedad." 13 L.P.R.A. sec. 695 (6) ) ; 13 L.P.R.A. sec. 735 (4). Sin embargo, esa sec. 7, que no fue enmendada en 1941, utiliza la frase "acciones y valores" en varios sitios (²) y en ninguno menciona la palabra "bonos". Si utilizáramos la lógica del recurrente tendríamos que atribuirle al legislador el contrasentido de permitir en la sec. 16 (*a*) (4) que un individuo deduzca una pérdida sufrida en virtud de la venta o permuta de "bonos" para compensar "las ganancias obtenidas durante el año contributivo como resultado de tales ventas o permutas", y de no proveer en la sec. 7, al decir únicamente "acciones y valores" y no expresamente "bonos", los criterios necesarios para fijar la base de la deducción. Finalmente, la posición del Banco, llevada a su extremo lógico, nos obligaría a excluir los "bonos" de las numerosas disposiciones de la Ley de 1924 que utilizan la frase "acciones y valores" o términos parecidos, (³) sin considerar en cada caso otros factores determinantes de su inclusión o exclusión.

No tenemos duda alguna de que la mención específica de la palabra "bonos" en la sec. 16 (*a*) (4), intercalada en 1941, no puede tener el efecto que pretende el recurrente ni sobre

---

(²) 13 L.P.R.A. sec. 665, Párrafos 6, 7, 8, 9, 10 y especialmente el 11.

(³) Véase 13 L.P.R.A. secs. 662, 664, 665, 694, 695, 701 y 745.

la sec. 32 (*a*) (4) ni sobre ninguna otra sección de la ley. ([4])
Se trata meramente de una adición por vía de énfasis, mo-
tivada tal vez por la mayor frecuencia de las compras de
bonos por individuos a principios de la pasada década. No
podemos interpretar las leyes sólo mediante la aplicación
mecánica de los tan manidos cánones de interpretación. Estos
no son otra cosa que "generalizaciones basadas en la experien-
cia", Frankfurter, *Some Reflections on the Reading of Sta-
tutes*, 42 Colum. L. Rev., 527, 544 (1947) y, como tales,
sujetos en su aplicación a las limitaciones que cada situación
concreta provee. Además, en prácticamente todas las ocasio-
nes es posible oponer una fórmula a otra. Así, por ejemplo,
en el presente caso, a la máxima ya citada sobre el efecto del
uso de palabras distintas en secciones distintas de una ley
podríamos oponer la máxima que ordena darle su sentido
ordinario y corriente a las palabras usadas por el legislador;
y al canon de interpretación favorable al contribuyente, el que
ordena interpretar restrictivamente las deducciones, por éstas
constituir un privilegio y ser el producto de la generosidad

---

([4]) En *Comunidad Fajardo* v. *Tribunal de Contribuciones*, 73 D.P.R.
543 (1952) citado por el recurrente, resolvimos que la sec. 32 (*a*) (2) de la
ley no prohibía las deducciones de pagos de intereses hechos por una
sociedad a una corporación. Indicamos que la primera parte de esa
sección permitía las deducciones de pagos de intereses sin restricción alguna
y que el *Disponiéndose* que le seguía, añadido en 1941, no prohibía expre-
samente las deducciones de los pagos de intereses de una sociedad a una
corporación. Añadimos que aun tratándose de una omisión involuntaria no
era función judicial suplir las omisiones. Son claras las diferencias entre
ambas situaciones. En el caso de *Comunidad Fajardo* se trataba de una
deducción que con anterioridad a la enmienda de 1941 estaba permitida
libremente, que luego de esa enmienda siguió permitiéndose pero sujeta a
restricciones específicas, y lo que se solicitaba del Tribunal era que injer-
tara una restricción adicional. En la controversia de autos se trata de
una restricción, aplicable a las corporaciones, sobre la deducción por pér-
didas en la venta o permuta de "acciones y valores", que antes de 1941 se
acepta cubría los "bonos", pero que luego de esa fecha se pretende no los
cubre porque otra sección, aplicable a los individuos, menciona los "bonos"
específicamente. Se trata, en este caso no de añadir una restricción más al
lenguaje específico de una ley sino de determinar el alcance jurídico de la
frase "acciones y valores" a la luz de todos los factores presentes y no del
único que el recurrente estima tiene pertinencia.

legislativa. No podemos embarcarnos en esta estéril contienda entre superficialidades y mucho menos utilizarla como sustituto de lo que debe ser la genuina función de los jueces en la interpretación de las leyes: el examen paciente y riguroso que parte de la letra de la ley y evalúa todos los elementos de juicio disponibles para así descubrir el verdadero significado y propósito de la disposición legal. Resolvemos, en vista de lo ya expresado, que la frase "acciones o valores" según se usa en la sec. 32(a)(4) de la Ley comprende la palabra "bonos".

Como fundamento alternativo de su solicitud para que revoquemos la sentencia apelada, el Banco sostiene que el Tribunal Superior erró al negarle el derecho a deducir las primas por concepto de depreciación o amortización según, a su juicio, lo permite la sec. 32(a)(6) de la Ley. En su parte pertinente ésta concede a una corporación el derecho a deducir de su ingreso bruto "Una concesión razonable por el agotamiento, desgaste, deterioro de propiedad usada en la industria o negocio, incluyendo una concesión razonable por la obsolecencia . . ." . El apelante invoca, además, el art. 130 del Reglamento núm. 1 del Departamento de Hacienda que versa sobre la depreciación de bienes "intangibles".(5) Acepta que la Ley de 1924 ni su Reglamento proveen el método que habría de usarse para determinar el monto de la depreciación en estos casos, pero nos sugiere adoptar lo que él llama "el método directo o de línea recta" (*straight-line method*) que en

---

(5) *"Depreciación de Propiedad Intangible.*—Aquellos bienes intangibles cuyo uso en la industria o negocio tiene una duración limitada, pueden ser objeto de la concesión por depreciación. Ejemplos de ello son las patentes y los derechos de propiedad literaria, las licencias y las franquicias. Los bienes intangibles cuyo uso en la industria o negocio no estén así limitados, generalmente no serán objeto apropiado de la concesión por depreciación. Sin embargo, si un activo intangible adquirido mediante la erogación de capital se sabe por experiencia que tendrá un valor en el negocio por un período limitado únicamente, la duración del cual pueda ser estimada por experiencia con suficiente certeza, tal activo intangible puede ser objeto de la concesión por depreciación, siempre que los hechos se expresen en detalle en la planilla o con anticipación a la misma, a satisfacción del Tesorero."

1942 se incorporó a la sec. 125 del Código de Rentas Internas Federal y luego a la sec. 125 de nuestra Ley de Contribuciones sobre Ingresos de 1954.

Como es sabido, las disposiciones de la ley y el reglamento de Puerto Rico se tomaron de la ley y los reglamentos federales de 1924. Las citadas disposiciones sobre depreciación son idénticas a las de la ley federal de 1921. Desde 1913 la interpretación uniforme de las disposiciones pertinentes de la ley federal fue siempre contraria a la que hoy se nos propone, hasta que en 1942 el Congreso legisló expresamente en sentido opuesto. Se explica así la situación en la obra de Mertens: "Con anterioridad a 1942 se consideraba en todos los casos que el pago de las primas de bonos (*bond premium*) producía una pérdida de capital, que se juzgaba sufría el dueño del bono, no al pagar la prima, sino al disponer posteriormente del bono o a su vencimiento. Además, todos los pagos periódicos sobre el bono, al tipo normal o de cupón, se incluían en el ingreso bruto en calidad de intereses. Esa práctica contributiva continuó por treinta años aun cuando las buenas prácticas de contabilidad requerían la amortización de las primas de bonos. Eventualmente el Congreso se dio cuenta de que debería eliminarse esa incongruencia y de que existía un injustificado discrimen en favor de los bonos exentos de contribución y en contra de los dueños de los bonos sujetos a ella. En la Ley de 1942 el Congreso introdujo una nueva técnica en el tratamiento contributivo de las primas de bonos al proveer para la amortización de [esas] primas." 4 Mertens, *op. cit.*, sec. 23.162, pág. 269.

La práctica federal se apoyaba en razones de peso. En *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109, 116 (1926), decidido al amparo de las disposiciones de la ley de 1913, dijo el Tribunal Supremo federal:

"La Compañía poseía muchos bonos, etc., pagaderos en fechas futuras, comprados a precios sobre su valor a la par, y creó un fondo para amortizar esas primas. Solicitó que una adición a ese fondo se dedujera de su ingreso bruto. La Corte de Distrito

consideró que la solicitud estaba bien fundada, pero la Corte de Circuito asumió otra posición. No se podía hacer una deducción a menos que la adición fuese una pérdida 'realmente sufrida durante el año' Obviamente, no había ocurrido una pérdida que pudiera precisarse. Posteriormente podían haberse vendido los valores a un precio mayor que su costo. No se podía conocer el resultado de la inversión hasta que se vendieran o se pagaran totalmente."

En *Corn Exchange Bank* v. *Commissioner*, 6 B.T.A. 158 (1927) la Junta de Apelaciones federal consideró también una situación en la cual el contribuyente había establecido un sistema de amortización anual de las primas.

"Los intereses provenientes de tales bonos no se reducen en verdad por los cargos anuales hechos con el propósito de amortizar las primas. No se disminuyen los intereses sobre los bonos realmente recibidos o percibidos porque el peticionario haya considerado parte de esos intereses como reservas anuales para amortizar las primas. Tampoco la separación de una cantidad anual para ese propósito constituye una pérdida real sobre los bonos, como la Corte ha dictaminado en *New York Life Insurance Co.* v. *Edwards*.

"Las mismas consideraciones gobiernan la determinación de la base apropiada a emplearse para computar la ganancia o pérdida en la venta de bonos, bajo la Ley de 1921 que bajo la Ley de 1913. El costo es la base que prescribe el estatuto para computar la ganancia o pérdida. No puede cambiarse esta base por supuestos aumentos o disminuciones en el valor que no se habían permitido anteriormente. Contrario a la depreciación, la amortización anual de las primas o los descuentos de los valores de otras corporaciones que se conservan con fines de inversión, no constituyen un ajuste permitido del ingreso, ni un ajuste permitido de la base para computar la ganancia o pérdida al realizarse una venta. . . . Un método de contabilidad que solamente refleja aumentos o disminuciones teóricos del ingreso, como creemos lo hace el método que propone el peticionario, no puede reflejar el ingreso correctamente según lo requiere la ley." (Págs. 162–163.) Véase, además, *Fink* v. *Northwestern Mutual Life Ins. Co.*, 267 Fed. 968, 971–972 (1920).

Aunque se ha criticado esta interpretación, (⁶) vimos que se mantuvo vigente durante treinta años en la jurisdicción federal y hasta que el Congreso proveyó una detallada reglamentación sobre amortización de bonos en la ley de 1942. Asimismo observamos que ni en nuestra ley de 1924 ni en su Reglamento se incluyó un método para determinar la amortización de bonos, (⁷) mientras que en ambos hay disposiciones específicas en cuanto a la manera de computar la ganancia o pérdida en la venta de acciones y valores. Es significativo, además, que nuestros legisladores esperaran doce años, luego de realizado el cambio en la ley federal, para ponerlo en vigor en nuestro país. En verdad lo que nos pide el contribuyente en este caso es que por vía de interpretación incorporemos a nuestra ley de 1924 la larga y detallada reglamentación sobre amortización de bonos que los legisladores del país adoptaron en 1954 (⁸) y que recientemente ha sido complementada por

(⁶) 8 Mertens, *op. cit.*, sec. 44.40, págs. 147–150.

(⁷) Significativamente, el art. 260 del Reglamento núm. 1 permite, en ciertas circunstancias, la amortización de las primas y los descuentos de los bonos *emitidos* por una corporación.

(⁸) "Sec. 3125. Prima de bonos amortizable

"(*a*) *Regla General.*—En el caso de cualquier bono, según se define en el apartado (*d*), las siguientes reglas serán aplicables a la prima de bonos amortizable, determinada bajo el apartado (*b*), sobre el bono para cualquier año contributivo comenzado con posterioridad al 31 de diciembre de 1953:

"(1) *Intereses tributables.*—En el caso de un bono que no sea un bono cuyos intereses sean excluíbles del ingreso bruto, el monto de la prima de bonos amortizable para el año contributivo será admitido como una deducción.

"(2) *Intereses exentos de tributación.*—En el caso de cualquier bono cuyos intereses sean excluíbles del ingreso bruto, no se admitirá deducción alguna por la prima de bonos amortizable para el año contributivo.

"El ajuste a la base debido a prima de bonos amortizable será como se provee en la sec. 3113 (*b*) (1) (H) de este título.

"(*b*) *Prima de Bonos Amortizable.*—

"(1) *Monto de la prima de bonos.*—Para los fines del párrafo (2), el monto de la prima de bonos en el caso del tenedor de cualquier bono será determinado con referencia al monto de la base para determinar pérdida en venta o permuta de dicho bono y con referencia al monto pagadero al vencimiento o en una fecha de redención más temprana, con los ajustes debidos para reflejar la prima de bonos no amortizada con respecto al bono para el período anterior a la fecha en la cual el apartado (*a*) fuere aplicable respecto al contribuyente con respecto a dicho bono.

numerosas disposiciones del Reglamento correspondiente. (⁹)
No podría justificarse ese proceder, aun aceptando la visión
más liberal de nuestras facultades interpretativas. Todo lo
expresado nos persuade de que debemos adoptar la doctrina
federal (¹⁰) anterior a 1942.

*Se confirmará la sentencia apelada.*

El Juez Asociado Sr. Santana Becerra no intervino.

---

"(2) *Cantidad amortizable.*—Las determinaciones requeridas bajo los párrafos (1) y (2) serán hechas—

"(A) de acuerdo con el método de amortizar la prima de bonos regularmente empleado por el tenedor del bono, si dicho método fuere razonable;

"(B) en todos los demás casos, de acuerdo con reglamentos del Secretario prescribiendo métodos razonables para amortizar la prima de bonos.

"(c) *Opción sobre Bonos Tributables.*—

"(1) *Elegibilidad para optar, y bonos con respecto a los cuales se permite la opción.*—Esta sección será aplicable a cualquier contribuyente con respecto a bonos cuyos intereses no sean excluíbles del ingreso bruto, pero sólo si el contribuyente hubiere optado por que esta sección le sea aplicable.

"(2) *Forma y efecto de la opción.*—La opción autorizada bajo este apartado será hecha de acuerdo con aquellos reglamentos que el Secretario prescriba. Si dicha opción fuere ejercida con respecto a cualquier bono descrito en el párrafo (1), del contribuyente, la misma será también aplicable a todos aquellos bonos poseídos por el contribuyente al comienzo del primer año contributivo a que fuere aplicable la opción y a todos aquellos bonos adquiridos de ahí en adelante por él, y será obligatoria para todos los años contributivos siguientes con respecto a todos dichos bonos del contribuyente, a menos que a solicitud del contribuyente el Secretario le permita, sujeto a aquellas condiciones que estime necesario, revocar dicha opción.

"(d) *Definición de Bono.*—Según se emplea en esta sección, el término 'bono' significa cualquier bono, obligación, pagaré, o certificado u otra evidencia de deuda, emitido por cualquier corporación y que devengue intereses, incluyendo cualquier obligación similar emitida por un gobierno o subdivisión política del mismo, con cupones de interés o en forma registrada, pero no incluye obligación alguna de éstas que constituya existencias en el negocio del contribuyente, ni obligación alguna de éstas de tal naturaleza que estaría propiamente incluída en el inventario del contribuyente si estuviere en existencia al cierre del año contributivo, ni obligación alguna de éstas poseída por el contribuyente primordialmente para la venta a parroquianos en el curso ordinario de su industria o negocio."

(⁹) Reglamento Relativo a la Ley de Contribuciones sobre Ingresos de 1954 (1958), págs. 524–534.

(¹⁰) Comprendemos que es difícil la posición del contribuyente bajo las disposiciones de la Ley de 1941 porque sólo puede deducir las pérdidas que le ocasiona la venta de los bonos de las "ganancias obtenidas durante el

---

año contributivo como resultado de ventas u otra disposición de acciones y valores." En las leyes federales de 1924 a 1942—con excepción de los años 1932–34 en los que existió una reglamentación en parte similar a la nuestra, 5 Mertens, *op. cit.,* sec. 28.86, págs. 295–298—se podían deducir las pérdidas del ingreso bruto sujeta a la limitación sobre ventas simuladas (*wash sales*). No puede haber dudas, sin embargo, en cuanto a las facultades de nuestra Asamblea Legislativa para establecer la norma descrita —*Neuberger* v. *Commissioner,* 104 F.2d 649, 650 (2do. Cir. 1939) *cert. denegado* 308 U. S. 623 (1939), 310 U. S. 655 (1940)—la cual, como ya hemos indicado, se mantuvo en vigor hasta 1954.