Urgell Cuebas, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Dorado Beach Hotel Corporation (DBHC) apela de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, sobre la demanda de sentencia declaratoria que ésta presentó contra Fairways Condominium Association. En dicha sentencia, el tribunal declaró que la servidumbre de paso que posee DBHC sobre los terrenos donde está ubicado el desarrollo residencial Fairways está limitada a lo necesario para la gerencia y operación de los hoteles, Dorado Beach y Ceromar, y para la recreación de los huéspedes de dichos hoteles.
Señala la apelante que el tribunal a quo incidió al considerar evidencia irrelevante a la controversia y excluir otra que era pertinente a ésta. Además, aduce que erró dicho foro al interpretar las cláusulas sobre la servidumbre *855 de paso.
Por los fundamentos que exponemos a continuación, procedemos a confirmar la sentencia apelada.
I
La controversia en el caso de autos gira alrededor de la interpretación de la cláusula denominada "FIFTH" de la escritura Núm. 18 de 12 de agosto de 1987, otorgada ante el Notario Juan Galanés Valdejuli, denominada "Deed of Purchase and Constitution of Easement". Las primeras tres cláusulas, denominadas "FIRST", "SECOND" y "THIRD", páginas 2 a 6 de la escritura, disponen los términos de la compraventa de un predio de terreno de 6.5119 cuerdas, respecto al cual la compradora fue Citadella Associates, S.E. (Citadella) y la vendedora BMJ, Inc.
Luego de la compra de la propiedad antes mencionada, Citadella desarrolló un proyecto residencial en ésta, conociéndose con el nombre de Fairways at Dorado Beach. Para proveerle acceso a la vía pública, Citadella obtuvo un permiso de acceso sobre ciertos terrenos de DBHC. Este acceso comienza desde la entrada principal del complejo hotelero Dorado Beach-Cerromar y se extiende, en forma paralela, a la carretera estatal Núm. 693, hasta la parte sur del terreno de Fairways. 
Las cláusulas "FOURTH" y "FIFTH" de la escritura Núm. 18 de 12 de agosto de 1987 definen una servidumbre de paso, en la cual el predio sirviente es el terreno adquirido por Citadella, denominado en dichas cláusulas con el término "Property". El predio dominante ("Dominant Tenements") está constituido por todos los terrenos de DBHC.
La cláusula "FIFTH", eje de la presente controversia, define la naturaleza de la servidumbre como sigue:
" — FIFTH: Constitution of Right of Way Easement.

Citadella and DBHC have agreed to the constitution of a right of way easement through the Property in favor of the Dominant Tenements, subject to and in accordance with the following terms and conditions:

—One: The easement (the "Right-of-Way Easement") shall be an easement of right-of-way (servidumbre de paso), it being the intent hereof that the owner or owners of the Dominant Tenements for themselves and their respective employees, agents, guests, and licensees shall have the use and enjoyment of the roadways in the Project whether paved or unpaved.

—Two: The area of the Property subject to the Right-of-Way Easement shall be limited to the roadway running parrallal [sic] to Route Six Hundred Ninety-Three (693).

—Three: The Right-of-Way Easement shall exist as an encumbrance upon the Property in perpetuity.

—Four: The owner or owners of the Dominant Tenements, its or their employees, agents, contractors and servants shall be permitted to use the Right-of-Way Easement for the unrestricted passage for maintenance, service, construction, recreational or other vehicles and personnel used in connection with the management and operation or the recreation of the guests of the Hyatt Dorado Beach and Hyatt Regency Cerromar Hotels and any other hotels located on the Dominant Tenements or any adjacent properties (collectively the "Hotels").

—Five: The owner or the owners of the Property, at its or their expense, shall be responsible for maintaining the roadways subject to the Right-of-Way Easement and keeping the same in good repair and reasonably neat appearance, provided that in the event the owner or owners of the Property fail to Comply with their obligations under this Paragraph Five, the owner or owners of the Dominant Tenements, its or their employees, contractors, subcontractors or agents shall have the right to enter upon the Property for the purpose of discharging the obligations of the owner or owners of the Property and the costs of all work done on such roadways shall be for 
*856
the account of such owner or owners.

—Six: The Right-of-Way Easement may not be cancelled or modified without the prior written consent of the owner or owners of record and the mortgagee or mortgagees, if any, of the Dominant Tenements.

—Seven: The owner or owners of the Dominant Tenements shall have no obligation to pay rent, license fees or other compensation to the owners or owners of the Property for the use of the Right-of-Way Easement.

—Eight: For the purpose of recordation in the Registry of Property, the parties hereto hereby attribute a value of ONE THOUSAND DOLLARS ($1,000.00) to the Right-of-Way Easement. ” 

Citadella construyó y vendió los apartamentos de vivienda del desarrollo Fairways at Dorado Beach como un condominio, pasando el control de las áreas comunes a la junta de condominos denominada Fairways Condominium Association (de ahora en adelante "la Asociación"). Esta última y DBHC tuvieron un desacuerdo sobre la interpretación de la servidumbre de paso establecida en la escritura Núm. 18 de 12 de agosto de 1987, del cual surgió un pleito de interdicto posesorio, caso 91-5494. El desacuerdo sobre la extensión de la servidumbre surgió cuando Lakeside Associates, S.H., desarrollador de "The Greens", otro proyecto residencial que también está ubicado y enclavado dentro de terrenos propiedad de DBHC, trató de utilizar la calle construida sobre la servidumbre de paso, como parte del camino de acceso que conectaría a "The Greens" con la entrada principal del complejo Dorado Beach-Cerromar. El pleito de interdicto posesorio culminó en la sentencia del 6 de noviembre de 1991, la cual mántuvo el statu quo de un uso limitado de la servidumbre, pero aclaró que la extensión del derecho de servidumbre de paso tenía que dilucidarse en un pleito ordinario, no en un interdicto posesorio.
El 3 de enero de 1996, DBHC presentó una demanda de sentencia declaratoria contra "la Asociación", solicitando al tribunal:

"...[QJque declare que la única interpretación válida del párrafo 5 de la escritura número 18 del 12 de agosto de 1987, crea un derecho de servidumbre de paso a favor de DBHC que incluye el derecho de acceso a The Greens por la vía que cruza por el lado sur de Fairways, y que ... dicha escritura concede el derecho de uso y disfrute de la servidumbre de paso para toda persona autorizada ('licensee') de DBHC y sus sucesores, incluyendo The Greens y otros predios dominantes."

El tribunal a quo dictó sentencia, el 25 de agosto de 2000, denegando el remedio solicitado por DBHC. La sentencia declara, en esencia, que el derecho de servidumbre de paso está limitado por lo dispuesto en el párrafo "Four” de la cláusula "FIFTH". Según la sentencia, la servidumbre de paso se extiende "únicamente para fines de mantenimiento, servicio, construcción, recreación y vehículos y personal utilizado en relación con la administración y operación o recreación de los huéspedes de dichos hoteles. En ningún sitio se dice que la servidumbre podrá ejercitarse por persona alguna como vía continua de acceso y tránsito, ni para ningún fin distinto a los expresados en el citado apartado cuatro." (Enfasis en original.)
Inconforme, DBHC presentó recurso de apelación señalando que incidió el tribunal a quo:

"A. [AJI interpretar la escritura de modo contrario a sus términos claros.

B. [A]l considerar prueba extrínseca, luego de concluir que la Escritura Núm. 18 es clara y que no se podía admitir prueba extrínseca.

C. Alternativamente, ...al considerar prueba extrínseca impertinente, y al excluir prueba extrínseca pertinente y directamente aclarativa de la intención de las partes.

D. [A]l determinar que la servidumbre constituida en la Escritura Núm. 18 de 1987, no cumple con la legislación vigente actual.

*857
E. [AJI determinar que Dorado Beach actuó con temeridad."

II
Los primeros cuatro señalamientos de errores están íntimamente relacionados, por lo que los discutiremos en conjunto. La discusión de los mismos por los apelantes y los apelados versa sobre las normas jurídicas y la evidencia pertinente para determinar la extensión o alcance de la servidumbre de paso que afecta al predio de los miembros de la Asociación.
Las partes presentaron evidencia testifical y documental en apoyo de sus respectivas contenciones. La apelante, DBHC, presentó el testimonio oral del Sr. Joseph McCloskey, socio gestor de Citadella Associates, S.E., y del Sr. Richard Schultze, presidente de DBHC. Dichos testigos son las personas naturales que representaron a las partes otorgantes en las negociaciones que precedieron la firma de la escritura en que se constituyó la servidumbre en controversia. Además, éstos comparecieron en representación de las partes otorgantes en la firma de la referida escritura. La parte apelada, la Asociación, sometió como evidencia documental la escritura Núm. 8 de 26 de abril de 1990, ante el notario Antonio J. Santos Pratts, entre DBHC y Lakeside Associates, S.E. (escritura Núm. 8). Además, presentó el testimonio oral del arquitecto Guillermo Riaño Chiesa y cierta prueba documental relacionada al ancho de la vía de acceso al desarrollo de Fairways.
Al considerar la posible pertinencia o procedencia de la evidencia recibida por el tribunal para interpretar la extensión de la servidumbre de paso, en primer lugar ha de considerarse la doctrina de la evidencia extrínseca, conocida en ingles como "parole evidence rule". La misma está incorporada en nuestro derecho en la Regla 69(B) de Evidencia, 32 L.P.R.A. Ap. IV, R. 69(B), la cual en lo pertinente dispone:
Regla 69. Regla de la mejor evidencia y de la evidencia extrínseca. 
“(A).

(B) Cuando en un convenio oral o escrito, ya sea público o privado, se hayan incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, se considerará que éste es uno integrado, por lo que no cabrá entre los convinientes o sus sucesores en interés, evidencia extrínseca al contenido del mismo, excepto en los siguientes casos:

(1) Cuando una equivocación o imperfección en el convenio sea alegada en el litigio;

(2) Cuando la validez del convenio constituye el hecho controvertido.

Esta regla no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare como lo son la situación del objeto a que se contrajere o la de las partes, o para probar ilegalidad o fraude. ” (Enfasis suplido.)
La primera parte de la evidencia admitida en el caso, cuya pertinencia está en controversia y cuestionan los apelados, se refiere al testimonio de los señores Joseph McCloskey, Richard Schultze y Harry Cook, respecto a la intención de las partes otorgantes. El Sr. McCloskey fue el socio gestor de Citadella Associates, S.E. y el desarrollador del proyecto de Fairways. El Sr. Schultze fue el presidente de DBHC durante las negociaciones y el Sr. Cook el abogado de DBHC. Estos declararon que participaron activamente en la negociación de los términos de la escritura Núm. 18, supra, y expusieron su versión sobre cuál fue la intención de las partes contratantes al incluir la cláusula "FIFTH" en la escritura Núm. 18, supra, y sobre la relación entre el inciso "One" y el inciso "Four" de dicha cláusula.
Dichos testimonios y los actos coetáneos posteriores y anteriores de DBHC y Citadella, serían pertinentes si la controversia a resolverse por el tribunal fuese una de índole contractual entre las partes contratantes. Para resolver este tipo de controversia, el tribunal viene llamado a determinar la verdadera intención de las partes. Para llegar a dicha determinación pueden ser pertinentes los testimonios de las partes contratantes, sus actos coetáneos *858 y posteriores al perfeccionamiento del contrato y todas las otras circunstancias que arrojen luz sobre la verdadera intención de éstas. Banco de Ponce v. Srio. de Hacienda, 81 D.P.R. 442 (1959).
Sin embargo, la controversia en el caso de autos no es una de naturaleza contractual. La parte demandada, la Asociación, es un tercero respecto a la escritura Núm. 18, supra. En otras palabras, la controversia de autos no gira sobre obligaciones personales de origen contractual, sino sobre la naturaleza de un derecho real, a saber, la extensión del gravamen impuesto sobre el predio sirviente por la servidumbre de paso, según inscrita en el Registro de la Propiedad. La Asociación representa los intereses de los adquirientes de un bien inmueble, o derecho real, cuyo derecho de dominio no es pleno, sino que está sujeto a una servidumbre de paso inscrita en el Registro. Dichos adquirientes, para entender la extensión de la limitación que impone la servidumbre de paso a su derecho de dominio, solamente tenían acceso a las instancias del Registro y a lo que de una inspección física de la propiedad se desprendiese. Ellos no podían ir a entrevistar a los otorgantes del contrato para que le expusieran su interpretación sobre cuál fue su propósito al crear dicha servidumbre.
En resumen, al considerar la pertinencia de los testimonios de los señores McCloskey, Schultze y Cook, debemos considerar los siguientes tres puntos o factores. Primeramente, que la doctrina jurídica sobre evidencia extrínseca, según incorporada en la Regla 69(B) de Evidencia, supra, no provee para la admisibilidad de dicho testimonio. En segundo lugar, que la cláusula "SIXTEENTH" de la escritura Núm. 18, supra, expresamente provee que, respecto a la servidumbre de paso, cualquier modificación de lo que se desprende del texto tiene que hacerse por escrito, lo cual no se hizo. Por ello, aun bajo la teoría contractual favorecida por la parte apelante, el tribunal no se podía desviar de lo que se desprende del texto. Finalmente, y como tercer punto o factor, está que la controversia en el caso de autos envuelve la interpretación de un derecho real de servidumbre de paso inscrito en el Registro de la Propiedad. Para determinar la extensión de la limitación al derecho de dominio envuelto, los adquirientes de unidades en Fairways se rigen por las instancias del Registro y de lo que un examen físico de la propiedad revela. En atención a las tres consideraciones antes mencionadas, resolvemos que los testimonios de los señores McCloskey, Schultze y Cook, en cuanto a la intención de las partes al otorgar la escritura Núm. 18, supra, no son pertinentes para determinar la extensión o alcance de la servidumbre de paso a que está afecta el desarrollo Fairways.
Pero, aun si dichos testimonios fuesen admisibles, en lo concerniente al alcance de la servidumbre, éstos no pueden cambiar o modificar lo que surge del texto de la escritura Núm. 18, supra, pues según la propia cláusula "SIXTEENTH", las partes contratantes acordaron que cualquier cambio en cuanto al derecho de servidumbre requería otorgarse por documento escrito. 
La segunda controversia, respecto a la pertinencia de la evidencia presentada por las partes, se refiere a la escritura Núm. 8 de 26 de abril de 1990, entre DBHC y Lakeside Associates S.E., sobre el terreno que eventualmente se convertiría en el desarrollo "The Greens", págs. 204 a 233 del apéndice. La cláusula "SEVENTH" de la misma está denominada del mismo modo y trata sobre el mismo tipo de derecho que la cláusula "FIFTH" de la escritura Núm. 18, supra. Ambas establecen una servidumbre de paso a favor de DBHC, pero el texto utilizado en las dos escrituras es sustancialmente diferente. La cláusula "SEVENTH" de la escritura Núm. 8, supra, dispone en parte:

"SEVENTH: Constitution of Right-of-Way Easement.

.... 

—Therefore, in consideration of the sale of the Property by DBHC to Lakeside, of which the easement granted hereby is an integral part, Lakeside hereby constitutes an irrevocable, exclusive real easement ("servidumbre predial") upon the Property, as servient tenement, in favor of the Dorado Beach Property and the Cerromar Property as dominant tenements (collectively the "Dominant Tenements"), in accordance with the following terms and conditions:

*859 —One: The easement (the "Right-of-Way Easement") shall be an easement of right-of-way ("servidumbre de paso"), it being the intent hereof that the owner or owners of the Dominant Tenements for itself and its respective employees, agents, guests, assignees and licensees shall have the use of the roadways in the Property whether paved or unpaved. The owner or owners of the Dominant Tenements and its (their) respective employees, agents, guests, assignees and licensees shall be permitted to use the Right-of-Way Easement for unrestricted passage (vehicular or pedestrian) for such uses and purposes as shall be determined by the owner or owners of the Dominant Tenements in its (their) sole and absolute discretion from time to time. ” (Enfasis suplido.)
“ — Two: The preamble in this Article SEVENTH is a general statement of purposes and is in no way meant to limit the uses and purposes for the Right-of-Way Easement, it being the intent of DBHC and Lakeside, for themselves and their respective successors, and assigns that the rights granted hereby to the owner or owners of the Dominant Tenements be as broad as permitted by law and that the owners or owners of the Dominant Tenements be allowed to use the Right-of-Way Easement for such uses and purposes as it (they) deem fit in its (their) sole and absolute discretion." (Enfasis suplido.)
La cláusula "SEVENTH", supra, no contiene ningún párrafo de naturaleza similar al párrafo "Four" de la cláusula "FIFTH" de la escritura Núm. 18, supra.
Al considerar la posible pertinencia de la escritura Núm. 8, supra, ha de tenerse en cuenta que ésta concierne otro predio de terreno, que los otorgantes (vendedor y comprador) son distintos a los de la escritura Núm. 18, supra. Solamente DBHC, como dueño del predio dominante en la servidumbre de paso, comparece en ambas escrituras. Si el remedio solicitado por DBHC en el caso de autos fuese a resolverse bajo la cláusula "SEVENTH" de la escritura Núm. 8, supra, es claro que procedería que se declarase que "dicha escritura concede el derecho de uso y disfrute de la servidumbre de paso para toda persona autorizada ('licensee') de DBHC y sus sucesores, incluyendo The Greens y otros predios dominantes. ” Pero la controversia de autos trata sobre la servidumbre de paso que se constituyó en la escritura Núm. 18, supra, y no bajo la escritura Núm. 8, supra, que se refiere a otros terrenos, por lo que dicha escritura no tiene pertinencia directa al caso de autos. Sin embargo, cabe señalar que la escritura Núm. 18, supra, no contiene el lenguaje amplio e irrestricto de servidumbre a favor de DBHC, tal como se expuso en la escritura Núm. 8. Esto implica que DBHC no quiso incluir tal lenguaje en la escritura Núm. 18, supra, por la razones que fuesen, o que DBHC no logró que los dueños del predio sirviente aceptasen conceder un derecho ilimitado de servidumbre de paso. De todas formas, como hemos señalado, la servidumbre que afecta los terrenos de la Asociación es la que se constituyó bajo la escritura Núm. 18, supra, la cual es a la que tenemos que atenemos.
El tercer área en controversia entre las partes, sobre la pertinencia de evidencia, concierne la que presentó la Asociación respecto al ancho de la vía de paso en el tramo que cursa sobre el terreno afecto por la servidumbre y el tramo que conecta a Fairways con la entrada al complejo Dorado Beach-Cerromar. La Asociación presentó el testimonio del arquitecto Guillermo Riaño Chiesa sobre lo anterior. Este declaró que examinó los planos relacionados con la vía de acceso a Fairways y un informe de agrimensura sobre el ancho de dicha vía. Indicó que de acuerdo con éstos, el ancho varía de cinco metros a cinco metros y medio. Ello concuerda con lo indicado en la minuta preparada por el juez que presidió la vista del caso, sobre el resultado de la inspección ocular del terreno afecto por la servidumbre de paso, pág. 234 del apéndice.
El último párrafo de la Regla 69 (B), supra, indica que “[e]sta regla no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare como lo son la situación del objeto a que se contrayere. ...". El testimonio del Arq. Riaño sobre el ancho de la vía, es admisible por ser evidencia de la situación del objeto de la controversia. Además, éste presentó el siguiente testimonio pericial, que aclara la pertinencia del testimonio sobre el ancho de la vía:

"P [Abogado de 'la Asociación'] ¿Y como resultado de lo que usted examinó allí y de su conocimiento del 
*860
reglamento de ARPE, a qué conclusión usted llegó?

R Que el acceso es adecuado para el proyecto que consiste de 28 unidades, el proyecto Fairway[s]. Pero no es adecuado para que sirva a otros proyectos, debido a que no tiene un ancho suficiente y adecuado. (Pag. 70, de la transcripción de la vista de 12 de junio de 2000.)

POR EL HON. JUEZ:

P Arquitecto, ¿cuánto sería el ancho de esa calle si fuera una calle regular para darle acceso a cualquier otra urbanización?

R El área de rodaje debería ser de 8 metros.

P ¿Yqué más?

R Y acera y 'planting', por lo menos, a un lado, eso lo aumenta en 2.50 metros a un ancho de 10.5 metros. ... (Págs. 71-72, transcripción de la vista de 12 de junio de 2000.)"

Concluimos que el ancho y la naturaleza de la vía de acceso son pertinentes, en conjunto con el texto de la servidumbre de paso inscrita en el Registro de la Propiedad, para determinar la extensión o alcance de ésta. Regla 69(B), supra.
Habiendo examinado y resuelto las controversias sobre la pertinencia de la evidencia testifical y lo relativo a la escritura Núm. 8, supra, pasaremos a considerar cuál debe ser la interpretación que debe darse a la cláusula contenida en la escritura Núm. 18, supra, sobre servidumbre.
Como principios de interpretación, de aplicación particular a las servidumbres voluntarias, como la del caso de autos, Vicente Guilarte Gutiérrez, La Constitución Voluntaria de Servidumbres en el Derecho Español, Ed. Montecorvo, Madrid, 1984, págs. 206 a 210, observa:

"§ IX OTRAS CUESTIONES RELACIONADAS CON EL TITULO

B. Contenido del Contrato de Servidumbre

d. Por último, deberá contener el título, la extensión y modalidad de la servidumbre; si bien, en caso de no constar, su extensión y modo de ejercicio serán los menos gravosos para el fundo sirviente. En todo caso, si de los demás elementos del contrato y a través de los canales de interpretación contractual no es posible llegar a la determinación de estos aspectos, habrá que pensar en la ineficacia del título. (Enfasis suplido.)

C. La Interpretación del Título

Existen, sin embargo, una serie de criterios que nos han de ayudar a interpretar correctamente un título constitutivo de servidumbre.

En primer lugar, hemos de decir, ante el principio de libertad fundaría, que la duda sobre la validez y eficacia de un título constitutivo de servidumbre habrá de resolverse en contra de tal derecho real. (Enfasis suplido.)

Por otra parte, si la duda se refiere a la extensión o modalidad de ejercicio del gravamen real, hay que acudir a la idea del mínimo perjuicio para el predio sirviente que se encuentra latente en la Sección tercera del *861 Capítulo 1, Título Vil, especialmente en los arts. 543 y 545. [Arts. 479 y 481 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 1671 y 1673]. Asimismo, ante la duda que pudiera suscitarse sobre si la servidumbre grava la totalidad o sólo parte del fundo ajeno, habrá de estarse a lo que el título diga al respecto para, en su defecto, estimar el tipo de servidumbre de que se trate, criterio que resultaría decisivo para la solución del problema en la mayoría de los supuestos. En todo caso, la idea del mínimo agravio ha de estar presente." (Enfasis suplido.)
A la luz de los principios antes presentados, examinemos la servidumbre de paso en el caso de autos. La misma fue presentada en el Registro de la Propiedad para su inscripción, la cual ha de atenerse a los términos de la cláusula "FIFTH" de la escritura Núm. 18, supra. Esta cláusula consiste de un párrafo introductorio, más ocho párrafos numerados, de los cuales los párrafos "One" y "Four" son los que están directamente envueltos en la controversia entre las partes. Estos dos párrafos son como sigue:
" — One: The easement (the Right-of-Way Easement') shall be an easement of right-of-way (servidumbre de paso), it being the intent hereof that the owner or owners of the Dominant Tenements for themselves and their respective employees, agents, guests, and licensees shall have the use and enjoyment of the roadways in the Project whether paved or unpaved. [Enfasis suplido.)
—Four: The owner or owners of the Dominant Tenements, its or their employees, agents, contractors and servants shall be permitted to use the Right-of-Way Easement for the unrestricted passage for maintenance, service, construction, recreational or other vehicles and personnel used in connection with the management and operation or the recreation of the guests of the Hyatt Dorado Beach and Hyatt Regency Cerromar Hotels and any other hotels located on the Dominant Tenements or any adjacent properties (collectively the 'Hotels')." (Enfasis suplido.)
Al examinar los dos párrafos, hemos de considerarlos en conjunto y armonizarlos para así determinar la extensión de la servidumbre de paso. Ulpiano Casal, Inc. v. Totty Mfg. Corp., 90 D.P.R. 739, 744 (1964); Caballero v. Kogan, 73 D.P.R. 666, 674 (1952); 31 L.P.R.A. sec. 3475.
De la totalidad de la cláusula "FIFTH" se desprende que el párrafo "One" define la naturaleza del tipo de derecho que se está creando como un derecho de servidumbre de paso. El párrafo "Four" restringe los usos para la cuales se podrá utilizar la servidumbre de paso creada. Este indica que el uso de la servidumbre será el requerido para la gerencia y mantenimiento de los hoteles, o para la recreación de los huéspedes de los hoteles.
A manera de ejemplos aclaratorios, consideremos los siguientes:

‘‘Una inspección física del predio sirviente demuestra que el mismo está localizado al lado de un campo de golf. Esto, en conjunto con el texto antes citado, conlleva que el uso permitido incluirá el tránsito por la vía afecta a la servidumbre por los usuarios del campo de golf, ya sea a pie o en sus carros de golf. Además, incluiría el paso por la vía afecta a la servidumbre del personal encargado de proveer mantenimiento al campo de golf, incluyendo el equipo usado para tales fines.

En forma similar, si el examen físico del predio sirviente en relación al predio dominante revelase que los huéspedes de los hoteles tienen acceso a paseos peatonales y de bicicletas, que colinden con el predio sirviente, entonces éstos podrían utilizar el terreno afecto a la servidumbre para sus caminatas o paseos en bicicletas.
El hecho de que el ancho de la vía es de sólo cinco metros, impacta, igualmente, los usos permitidos de la misma, ya que debido a lo estrecho de dicha vía, ésta no está capacitada para servir a un alto número de vehículos. Al resolver si un uso vehicular en particular está permitido bajo la servidumbre, hay que considerar el ancho de la vía, el texto del párrafo "Four" sobre los usos permitidos y la norma de interpretación, al efecto de que en caso de ambigüedad, la servidumbre ha de entenderse en la forma menos gravosa al predio sirviente.
Al considerar el uso de la servidumbre por los residentes del desarrollo "The Greens", quienes la utilizarían *862 para transitar en sus vehículos cada vez que entren y salgan de su desarrollo, así como por aquéllos que vengan a visitarles, resolvemos que dicho uso no está incluido en la servidumbre constituida en la escritura Núm. 18, supra. El mismo no está relacionado con el entretenimiento de los huéspedes de los hoteles. Tampoco está relacionado al mantenimiento y gerencia de los hoteles. Esto convertiría la servidumbre en una más gravosa al predio sirviente, ya que el ancho de la vía no es el adecuado para los propósitos que persiguen los residentes del desarrollo"The Greens".
Cabe señalar, que en el caso de autos, la redacción de las cláusulas respecto a la servidumbre de paso no son claras y que cualquier interpretación de una cláusula ambigua milita en contra de la posición sostenida por DBHC. Las reglas de interpretación de las servidumbres voluntarias indican claramente que los casos ambiguos han de resolverse en la forma que sea menos gravosa al predio sirviente. Guilarte Gutiérrez, supra.
No incidió el tribunal a quo al disponer que los usos de la servidumbre están limitados a aquellos usos indicados en el párrafo "Four" de la cláusula "FIFTH" de la escritura Núm. 18, supra.
En resumen, los primeros cuatro errores señalados no se cometieron. La interpretación de la extensión de la servidumbre no permite considerar el testimonio de los contratantes en la escritura Núm. 18, supra, ni son directamente pertinentes otras escrituras en las que DBHC hubiese adquirido servidumbre de paso sobre otros predios. La información sobre la situación del objeto y sobre el texto de la servidumbre, según inscrita en el Registro de la Propiedad, sí son pertinentes. El ancho de la vía es de sólo cinco metros, lo cual es insuficiente para dar acceso a otros desarrollos, y el párrafo "Four”, supra, dispone que el uso estará limitado a lo requerido para la gerencia y operación de los hoteles y la recreación de sus huéspedes. La servidumbre de paso no provee para el uso de la misma por los residentes en "The Greens", ni para el uso ilimitado por cualquier persona que DBHC así designe.
IH
En el quinto señalamiento de error, DBHC argumenta que no procedía se le declarase incursa en temeridad y se le impusiesen honorarios de abogado.
En cuanto a la determinación de temeridad, ésta descansa en la sana discreción del tribunal. Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468 (1983); Font v. Pastrana, 73 D.P.R. 247 (1952). Los hechos del caso demuestran que el foro de instancia no incurrió en abuso de discreción. En relación a la cuantía impuesta por honorarios de abogados, reiteradamente se ha resuelto que un tribunal apelativo no intervendrá con ésta, a menos que la misma sea excesiva, muy exigua o constituya un abuso de discreción. Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Corpak Inc. v. Ramallo Brothers Printing Inc., 125 D.P.R. 724 (1990); Ramírez Anglada v. Club Cala de Palma, 123 D.P.R. 339 (1989); Fernández v. San Juan Cement Co. Inc., 118 D.P.R. 713 (1987). No se cometió el quinto error señalado.
IV
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 38
1. Véase, pág. 64 del apéndice del presente recurso que contiene un mapa que presenta gráficamente el acceso a Fairways y la calle interna de Fairways, sobre la cual se concedió la servidumbre de paso que está en controversia.
2. Además de las referencias incluidas en la cláusula "FIFTH" al efecto de que se está constituyendo una servidumbre de *863 paso, que la misma será a perpetuidad, y la valorización de ésta en $1,000 para propósito de inscripción en el Registro de la Propiedad, la cláusula "TENTH" despeja toda duda sobre la intención de las partes de crear un derecho real de servidumbre de paso, al disponer como sigue:

“-TENTH: Petition to the Registrar. The parties to this deed respectfully request that the Honorable Registrar of Property of the Second Section ofBayamón record the putchase and sale of the Property and the Right-of-Way Easement and The Green Easement as real easements (‘servidumbres prediales’) upon the Property in favor of the Dominant Tenements. ”

3. La Regia 69(B), supra, sustituyó el Art. 25 de la Ley de Evidencia de 9 de marzo de 1905, 32 L.P.R.A. see. 1668. Dada la sustancial similitud entre éstas, la mayor parte de la jurisprudencia interpretativa del Art. 25 constituye fuente de orientación sobre la doctrina de evidencia extrínseca en nuestra jurisdicción. El texto del Art. 25, supra, dispone:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

2. Cuando la validez del convenio constituyere el hecho controvertido.

Pero esta sección no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en la see. 1671 de este título, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes."

4. El texto de la cláusula "SIXTEENTH" es como sigue:
"-SIXTEENTH: Entire Agreement and Amendment. This deed constitutes the entire agreement between the parties. Citadella or the owner or owners of the Property at the time and DBHC or the owner or owners of the Dominant Tenements at the time, may amend Articles FIFTH and SIXTH of this deed, but no amendment shall be effective unless it is in writing and duly executed by said parties.” (Enfasis suplido.)
5. La cláusula "SEVENTH" contiene un preámbulo cuya intención es dejar constancia de que: (1) la constitución de la servidumbre es en sustitución de otra servidumbre preexistente; (2) que la segregación de la propiedad que allí se vende deja desprovisto de acceso a varios otros predios de DBHC; (3) que DBHC expresamente contempla usar la servidumbre de paso que en esta escritura se concede para proveer acceso ilimitado a varios desarrollos que potencialmente se pueden construir en los terrenos de DBHC.
6. No existe duda de que la gerencia de DBHC y su representante legal entendían y conocían cuál es el lenguaje apropiado que ha de incluirse en una escritura para que la servidumbre de paso sea de naturaleza irrestricta o ilimitada.
7. Consideraciones de política pública, al efecto de que se ha de favorecer el libre comercio en bienes inmuebles, respaldan y proveen fundamento a la norma doctrinal sobre la interpretación restrictiva de las servidumbres voluntarias. Está claro que una interpretación liberal o expansiva de la extensión de una servidumbre, como solicitó la parte apelante, militaría en contra del libre comercio en bienes inmuebles. Los adquirientes de dichos bienes, y sus acreedores hipotecarios, no podrían determinar con certeza la extensión de las servidumbres que afectan el inmueble, exponiéndolos a limitaciones imprevistas en su derecho de dominio, con el potencial de resultar, en un significativo decremento del valor en el mercado de dichos bienes. Estas limitaciones no serían determinables a base de un examen de las instancias del Registro de la Propiedad y la inspección física del inmueble, lo cual haría más riesgoso el comercio en éstos y limitaría la fácil transferencia de los mismos.